GREAT AMERICAN INSURANCE COMPANY, Appellant,

v.

Diane June SPODEN, et al., Defendants,

William A. Smoley, et al., Respondents.

No. 81–344.

Supreme Court of Minnesota.

March 19, 1982.

Darrell A. Jensen & Associates and Michael G. Simpson, Anoka, for appellant.

Robins, Zelle, Larson & Kaplan and John G. Brian, III, St. Paul, for Smoley, et al.

## OPINION

PETERSON, Justice.

This appeal, brought against a law firm and its attorneys individually by a nonclient workers' compensation carrier, inquires into the circumstances under which an attorney acquires a duty to preserve part of a client's recovery in a third-party action to satisfy the subrogation interest of the carrier. The district court granted summary judgment in favor of the attorneys, finding that they owed no duty to the workers' compensation carrier. Because the carrier alleges no more than that the attorneys had notice of its claim, without alleging any agreement with or assurance by the attorneys, we affirm.

On April 4, 1973, defendant Diane Spoden was injured in an automobile accident while acting within the scope of her employment. Plaintiff Great American Insurance Company subsequently paid her $14,859.29 in workers' compensation benefits under its policy with her employer, Stearns County.

On August 24, 1973, Spoden retained the law firm of Rinke, Klaphake & Noonan, Ltd. (the firm)[1] to represent her in a lawsuit against the negligent third parties responsible for her injuries. In a letter to Spoden dated March 1, 1974, the firm admitted that they had recently received notice of subrogation from plaintiff and recognized that plaintiff "will expect to be paid out of any settlement prior to our receiving any money."

The third-party negligence action proceeded to trial and, in March 1976, judgment was entered in the amount of $85,391.15. A motion for new trial was granted subject to remittitur, and Spoden initiated an appeal.

On March 26, 1976, and again on March 2, 1977, plaintiff informed the firm that its subrogation interest totaled $14,859.29, and on both occasions it requested information on the status of Spoden's third-party claim. The firm responded on March 14, 1977, that the matter was on appeal to the Minnesota Supreme Court.

Eight months later, Spoden accepted the remittitur, and on November 22, 1977, the firm received a draft for $51,510.38 from one of the third-party defendants. The firm deducted its fees and costs from this amount and distributed the remainder to Spoden, except for $5,000 withheld in the firm's trust account ostensibly on behalf of the subrogated workers' compensation carrier. The existence of this account was not communicated to plaintiff.

Over the next 18 months, a dispute continued between plaintiff and the firm over the proper calculation of the former's subrogation interest pursuant to Minn.Stat. § 176.061, subd. 6 (1974). The dispute was litigated in the Workers' Compensation Division, in the Workers' Compensation Court of Appeals, and in this court. Ultimately,

1. Now Rinke, Noonan, Grote & Smoley, Ltd.

plaintiff's claim of $14,859.29 was upheld. The firm then advised Spoden and her husband that "the matter is not over yet," that plaintiff "still has to bring an action to collect [its] claim," and that meanwhile the Spodens and their counsel "will just sit tight."

In spite of the ongoing contest between plaintiff and the firm over the magnitude of the subrogation interest, on March 6, 1978, the firm released the last $5,000 of the settlement to the Spodens. Thus, when plaintiff attempted to collect on its statutory right of subrogation, it found that the proceeds were not being held in trust by the firm and that the Spodens were apparently without means to satisfy the subrogation interest.[2]

Spoden now claims that the firm misled her to believe the subrogation interest would be "a very small percentage of the amount of recovery," and that she accepted the $5,000 from the firm's trust fund on her counsel's recommendation. Spoden further claims that the firm never informed her or her husband that plaintiff was demanding over $5,000 in subrogation. She says she would not have accepted the $51,510.38 settlement if her lawyers had explained her potential subrogation liability of $14,859.29, but, rather, would have requested a new trial.

Statutory subrogation provisions, such as that relied upon by plaintiff in this case, are a means to the orderly administration of

risk-spreading legislative programs.[3] Even though they may expressly authorize legal proceedings by either direct actions or intervention in third-party actions, the provisions can in fact make costly litigation unnecessary by clearly delineating the priority of obligations of alternative sources of recovery. Litigation is avoided, however, only to the extent that good faith cooperation exists among the parties and the attorneys involved.

The case before us demonstrates the ease with which the goal of orderly administration can be undermined. Seven parties are locked in litigation because plaintiff's informal attempts to protect its subrogation interest were disregarded by all who had notice of that interest.[4] Additionally, the alleged failure of the firm to advise Spoden of her potential liability to plaintiff, which it is suggested stemmed from the firm's self-serving desire that she accept the remittitur, has resulted in a judgment against Spoden and a pending cross-claim by Spoden against the firm.

It is evident that the firm's conduct of this matter compromised its ethical obligations on behalf of its client and on behalf of the judicial system.[5] The question presented, however, is whether a duty extended from the firm to plaintiff on which plaintiff can rest its claim for damages. Our reading of section 176.061 reveals that the legislature intended no such duty.[6] We must

2. At the same time the trial court granted summary judgment in favor of the firm, it also granted plaintiff summary judgment against Spoden (which was not appealed) in the amount of its subrogation interests and left pending for trial Spoden's cross-claim against the firm.

3. See, e.g., Minn.Stat. § 65B.53 (1980) (subrogation within no-fault system), Minn.Stat. § 176.061 (1980) (subrogation within workers' compensation system), Minn.Stat. § 393.13 (1980) (subrogation of county agency for certain public assistance expenditures).

4. The record also reveals an inexplicable lack of professional courtesy to the point that plaintiff needed four written requests and over six months before it received from one of the parties a simple acknowledgment of receipt of a letter identifying its subrogation claim.

5. We do not overlook the fact that plaintiff could have taken stronger measures to protect its interest. The statute gives a workers' compensation carrier a right to actively participate in an employee's recovery against a third-party tortfeasor. Minn.Stat. § 176.061, subds. 3, 5, 7 (1974). This court will not allow a right of participation to be defeated by negotiations between the employee and the third-party tortfeasor to which the subrogated carrier is not privy. Naig v. Bloomington Sanitation, 258 N.W.2d 891, 893–94 (Minn.1977). In the present action, however, it is undisputed that plaintiff had notice of the third-party action but declined to participate.

6. Cf. 5 U.S.C. § 8132 (1976) (Federal Employees' Compensation Act explicitly imposes duty on attorney to satisfy subrogation interest of United States prior to distribution of proceeds to beneficiary).

look to the conduct of the parties to determine if a duty was created.

By giving notice of the amount of its subrogation claim and requesting information on the status of Spoden's third-party action, plaintiff revealed its interest in recovering on that claim. Mere notice of a subrogee's claim is nevertheless not sufficient to impose a duty in tort upon the attorneys. The firm's duty of loyalty to its client would be unreasonably diluted were we to hold that notice alone compels an attorney to act on behalf of a nonclient carrier claiming an interest in the client's recovery. Without deliberate and express assurance by employee's counsel, there is no guarantee that the predominant interests of the client have been given due consideration. Of course, in most cases it is in the client's interest to cooperate with a subrogated carrier and thereby avoid the wasteful expense of defending an action brought by the carrier. Still, the burden is on the subrogated carrier to prove conduct which shows a tacit understanding or implied contract between the carrier, attorney, and client (perhaps speaking through the attorney) to the effect that the subrogation interest will be protected. *See United States v. Limbs,* 524 F.2d 799, 802–03 (9th Cir. 1975), *Travelers Insurance Co. v. Haden,* 418 A.2d 1078, 1084–85 (D.C.1980).

The record before us does not reveal any deliberate and express assurance by the firm to plaintiff that the carrier's subrogation interest would be preserved. Nor does plaintiff rely on such assurance as the basis for this action.[7] Although the treatment of plaintiff's claim by the firm is reprehensible and patently frustrates statutory objectives, we hold that absent such assurance the firm owed no legal duty to plaintiff and accordingly affirm.

Affirmed.

KELLEY, J., took no part in the consideration or decision of this case.

\*   \*   \*   \*   \*   \*

7. Plaintiff's "Answers to Interrogatories" contains the following:

2. State whether or not your claim against the Defendants, William A. Smoley, Orrin V. Rinke, Gerald R. Grote, D. Michael Noonan and Rinke, Noonan, Grote & Smoley, Ltd., is predicated on anything other than your having notified them of your subrogation rights; and, if so, state the basis of such claim or claims, detailing all facts and circumstances on which said claim or claims is based stating further the law on which you rely in making such claim.

ANSWER: Our claim is based upon notice of the subrogation rights, duty imposed upon counsel as constructive trustee, order of the Workers' Compensation Judge, Workers' Compensation Court of Appeals, and the Supreme Court of Minnesota which (although such carried the name of Diane Spoden) were directed to Attorney William A. Smoley and his firm, as the funds were deposited in their trust account.

5. State whether or not any writing, statement or representation was made to you by any of the representatives of the Defendants, William A. Smoley, Orrin V. Rinke, Gerald R. Grote, D. Michael Noonan and Rinke, Noonan, Grote & Smoley, Ltd., stating your subrogation interest would be protected or that you would be paid your subrogable interest; if so:
a. State who assured or represented.
b. When such assurance or representation was made.
c. To whom it was made.
d. State in detail the context of such representation or assurance and attach copies if in writing.
ANSWER: \* \* \*
The right to subrogation interests is absolute and mandated by statute as was indicated in the Supreme Court Order regarding such.