3 F.3d 1508
 62 USLW 2241
 Mannie CHAPMAN, Jimmie Erskine, Dorothy Reid, James L.
Woodall, R.P. Vinall, and Diane L. Ragone,
Plaintiffs-Appellees,
v.
Herman M. KLEMICK, Herman M. Klemick P.A., a Florida
Professional Association, Defendants-Appellants;
Mannie CHAPMAN, Jimmie Erskine, Dorothy Reid, James L.
Woodall, R.P. Vinall, and Diane L. Ragone,
Plaintiffs-Appellees, Cross-Appellants,
v.
Herman M. KLEMICK, Herman M. Klemick P.A., a Florida
Professional Association, Defendants-Appellants,
Cross-Appellees.
 Nos. 91-5854, 92-4355.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 12, 1993.
 
 Phillip D. Parrish, Stephens, Lynn, Klein & McNicholas, Miami, FL, for defendants-appellants.
 Mark J. Berkowitz, Alice Weisman, Sugarman & Susskind, P.A., Miami, FL, for plaintiffs-appellees.
 Appeals from the United States District Court for the Southern District of Florida.
 Before EDMONDSON and CARNES, Circuit Judges, and HILL, Senior Circuit Judge.
 CARNES, Circuit Judge:
 
 
 1
 This case arises under the Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. Secs. 1001-1461. The issue presented is whether an attorney who represents a beneficiary of a trust fund in the beneficiary's separate personal injury action becomes a fiduciary under ERISA when, in settlement of his client's personal injury claim, the attorney receives funds to which the trust fund asserts subrogation rights. The district court held that the attorney became an ERISA fiduciary when he received such funds, and that he breached his fiduciary duty to the trust fund by disposing of those funds in a manner inconsistent with the subrogation agreement his client had signed. Because we do not think that ERISA's reach extends this far, we reverse. Our reversal of the district court's decision imposing liability on Klemick renders the Trust Fund's cross appeal for an increase in the damages award moot.
 
 BACKGROUND
 
 2
 The facts were stipulated by the parties in the district court. Chapman v. Klemick, 750 F.Supp. 520, 521-22 (S.D.Fla.1990). Briefly, Frank Wilson, Jr., a beneficiary of the Laborers Health and Welfare Trust Fund of South Florida ("Trust Fund") suffered personal injuries as a result of a motorcycle accident and retained the professional services of Herman Klemick, a lawyer, to assist him in recovering compensation from the tortfeasor's insurance carrier. Wilson incurred approximately $28,000.00 in medical expenses, which he sought to have the Trust Fund pay. Prior to releasing the funds, however, the Trust Fund requested that he sign a subrogation agreement stating that the Trust Fund would be reimbursed should he recover any compensation for his injuries by suit, settlement, or otherwise. After consulting Klemick by telephone, Wilson signed the agreement.
 
 
 3
 Following negotiations with the tortfeasor's insurance carrier, Klemick received a check for $25,000.00 made out jointly to him and Wilson. Klemick asked the Trust Fund to waive its right to subrogation, but the Trust Fund declined. Klemick stated to the Trust Fund that he would never recommend that his client voluntarily turn over all the settlement funds that he had recovered, and indicated that he had conceived of a plan by which, even if the Trust Fund sued Wilson and obtained a judgment against him for the amount of money recovered in the settlement, the Trust Fund would be frustrated in its attempts to collect.
 
 
 4
 A few days after his conversation with the Trust Fund, Klemick and Wilson endorsed the check. Klemick deposited the entire amount in the Herman M. Klemick, P.A. Trust Account, and made out a check to Wilson for $15,431.50. Klemick then paid himself $8,333.00 as his attorney's fee and applied the balance to offset costs.
 
 
 5
 Ten days later, the Trust Fund filed a complaint and application for a temporary restraining order to enjoin Wilson from spending the funds. In an emergency hearing on that application, Wilson informed the district court that he had already spent all of the money. The Trust Fund obtained a judgment against Wilson for the full amount of the settlement plus $21,659.00 in attorney's fees. See Pugh v. Wilson, 693 F.Supp. 1096 (S.D.Fla.1988). The validity of that judgment against Wilson is not at issue in this case, but Wilson's assets were insufficient to satisfy the judgment against him. The Trust Fund then sued Klemick, alleging that he had become an ERISA fiduciary because Wilson's insurance settlement became "Trust Fund assets" by operation of the subrogation agreement, and that Klemick had breached his fiduciary duty to the Trust Fund by retaining a portion of the settlement as his attorney's fee and allowing Wilson to spend his portion.
 
 
 6
 The case came before the district court on cross-motions for summary judgment. The district court granted the Trust Fund's motion and denied Klemick's, finding Klemick liable for breach of fiduciary duty under ERISA. Klemick has appealed to this Court. We review the district court's grant of summary judgment de novo. Useden v. Acker, 947 F.2d 1563, 1572 (11th Cir.1991), cert. denied --- U.S. ----, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993).
 
 DISCUSSION
 
 7
 We look first to the statutory definition of "fiduciary" under ERISA. 29 U.S.C. Sec. 1002(21)(A) provides in pertinent part:
 
 
 8
 [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
 
 
 9
 The district court held that the subrogation agreement rendered the settlement proceeds "Trust Fund assets," and that Klemick had exercised control over those assets, therefore, Klemick was a fiduciary of the Trust Fund. The court said: "[W]hen Klemick decided how to allocate the monies from the settlement check ... he exerted what is obviously 'any ... discretionary control respecting ... disposition of [Trust Fund] assets.' " Chapman, 750 F.Supp. at 522-23. We must decide whether the district court's conclusion that Klemick was a fiduciary is correct.
 
 
 10
 As an initial matter, we are not persuaded that the $25,000.00 received by Wilson in settlement of his tort claim constituted "Trust Fund assets." At the time Klemick disbursed those funds, what the Trust Fund had by virtue of its agreement with Wilson was a contractual "claim" for reimbursement of the $28,000.00 in medical expenses it had paid on behalf of Wilson. That did not automatically convert the $25,000.00 settlement which Klemick disbursed into assets of the Trust Fund. Nonetheless, we need not rely solely on the characterization of those funds for our conclusion, because a functional analysis of Klemick's status also leads to the conclusion that he was not acting as a fiduciary of the Trust Fund for purposes of ERISA. See Useden v. Acker, 947 F.2d 1563, 1577 (11th Cir.1991) (applying the "functional definition of fiduciary status enshrined in ERISA"), cert. denied, --- U.S. ----, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993).
 
 
 11
 We are aware of no case in which a lawyer for an ERISA plan beneficiary, as opposed to a lawyer for an ERISA plan, has been alleged to be an ERISA fiduciary. The closest authority we find for guidance is Useden v. Acker, which we decided after the district court entered summary judgment in this case. In Useden, a trust fund sought to impose fiduciary liability on a bank which had acted upon collateral pledged by the fund when the fund failed to perform under a loan agreement with the bank. The fund also sought to impose fiduciary liability on a law firm that had rendered legal and business advice to the fund's managers. We found that neither was an ERISA fiduciary.
 
 
 12
 The trust fund in Useden argued that the bank became a fiduciary under Sec. 1002(21)(A) when it exercised "discretionary authority or discretionary control" over trust fund assets. We held that the bank was not a fiduciary within the meaning of ERISA, observing that "the discretionary role needed to support fiduciary status must amount to more than a theoretical contrivance." Useden, 947 F.2d at 1574. The terms of the loan agreement, which were typical of arm's length commercial loan agreements, did not confer fiduciary status on the bank: "An entity which assumes discretionary authority or control over plan assets will not be considered a fiduciary if that discretion is sufficiently limited by a pre-existing framework of policies, practices and procedures," such as rules governing when a bank may act on collateral in the event of non-performance on a commercial loan. Id. at 1575. Furthermore, we noted that the bank's "duty to its own shareholders and depositors" could conflict with a fiduciary duty to an ERISA plan borrower, "subjecting lenders to irreconcilable obligations and in so doing make it difficult or impossible for pension plans to persuade lenders to enter into arm's length, commercial loan transactions." Id. at 1575-76.
 
 
 13
 We also held that the law firm in Useden was not a fiduciary even though it had rendered both business and legal advice to the trust fund. We relied in part on federal regulations relating to ERISA that provide that an attorney who renders legal services to an employee benefit plan ordinarily will not become a plan fiduciary, where those services amount to no more than an attorney's "usual professional functions." 29 C.F.R. Sec. 2509.75-5. The law firm in Useden had not departed from the usual functions of a law firm or otherwise effectively or realistically controlled the trust fund. Id. at 1577. Our decision in Useden also pointed out the compelling policy reasons for exercising caution in imposing fiduciary liability on attorneys:
 
 
 14
 We think it imprudent and counter to the thrust of the ERISA scheme to hold that the commingling of legal advice with incidental business observations, especially when this advice is proffered to businesspersons of some sophistication, will automatically confer fiduciary status on attorneys and thus expose them to ERISA liability.... ERISA does not contemplate an allocation of liability that will deter consultants such as attorneys from assisting plans.
 
 
 15
 Id. at 1577-78.
 
 
 16
 The situation here is different from that in Useden, but in a way that makes that decision even more compelling authority for this case. The governing regulations, which we interpreted in Useden, involve the possibility of fiduciary status for attorneys arising in the context of the provision of professional services "to an employee benefit plan." In this case, Klemick rendered professional services, not to the Trust Fund, but to Wilson, an individual beneficiary of the Trust Fund. Neither the statute itself nor the regulations address the possibility of fiduciary status for an attorney who renders professional services to a plan beneficiary, and we are aware of no other case in which an ERISA plan has even argued that ERISA imposes fiduciary liability on a plan beneficiary's personal injury lawyer.
 
 
 17
 In Useden, we cited with approval the Ninth Circuit's decision in Nieto v. Ecker, 845 F.2d 868 (9th Cir.1988), where the court held that an attorney retained by a group of ERISA plans to collect delinquent contributions from member employers did not acquire fiduciary status. 947 F.2d at 1578. Using an argument similar to the one presented in this case--that the attorney's failure to collect sums owed to the trust fund constituted a dissipation of trust fund assets--the plans sought to impose fiduciary liability. The Ninth Circuit concluded that "[t]his argument proves far too much," because "[u]nder this rationale, anyone performing services for an ERISA plan--be it an attorney, an accountant, a security guard or a janitor--would be rendered a fiduciary insofar as he exercised some control over trust assets and through negligence or dishonesty jeopardized those assets." Nieto, 845 F.2d at 870-71. The Ninth Circuit held that the attorney in Nieto, who had been employed by the plans and presumably given some measure of control over the trust assets he collected, was not a fiduciary.
 
 
 18
 We find the arguments against imposing fiduciary status on an attorney who represents a trust fund beneficiary even more compelling than those against imposing fiduciary status on banks that enter financial transactions with and attorneys who render advice or services to an ERISA plan or trust fund. While Klemick did not assume the type of discretionary control over Trust Fund assets that the bank in Useden had, nonetheless, a "pre-existing framework of policies, practices and procedures" similar to that which relieved the bank in Useden from liability figures prominently in this case. See Useden, 947 F.2d at 1575. An attorney has an ethical obligation to his or her client that does not admit of competing allegiances. The following rule binds lawyers admitted to practice law in Florida:
 
 
 19
 A lawyer shall not represent a client if the lawyer's exercise of independent professional judgment in the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person or by the lawyer's own interest ....
 
 
 20
 Florida Rules of Professional Conduct Rule 4-1.7(b). "Loyalty to a client is also impaired when a lawyer cannot consider, recommend, or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests." Id. cmt. Klemick was retained by Wilson and owed a fiduciary duty to him alone. Just as imposing fiduciary liability on the bank in Useden would have subjected it to "inconsistent obligations," imposing fiduciary liability on Klemick would also create unacceptable conflicts of interest.
 
 
 21
 As a practical matter, we noted in Useden, 947 F.2d at 1575-76, 1578, that imposing fiduciary status willy-nilly would make banks and law firms extremely wary of ERISA plans as customers and clients. Imposing fiduciary status in cases such as this one would likely render it difficult for trust fund beneficiaries with personal injury claims to obtain counsel. That result would work to the detriment of ERISA trust funds; there would be a reduction in recovery from tortfeasors, and a concomitant reduction in the amounts available for subrogation payments. Moreover, a beneficiary who needed legal services in order to dispute the validity or enforceability of a subrogation agreement might be left out in the cold. The drafters of ERISA intended fiduciary liability to be broadly construed, see Brock v. Hendershott, 840 F.2d 339, 342 (6th Cir.1988); Donovan v. Mercer, 747 F.2d 304, 308 (5th Cir.1984), but even a broad construction has limits. In this case, the district court's judgment transgressed those limits.
 
 
 22
 The district court in this case put Klemick in the untenable position of owing conflicting fiduciary duties to both his client, Wilson, and to the Trust Fund. We do not think that Congress intended ERISA to extend that far. As one widely-cited authority has said:
 
 
 23
 No man can serve two masters: for either he will hate the one, and love the other; or else he will hold to the one, and despise the other. Ye cannot serve God and mammon.
 
 
 24
 Matthew 6:24 (King James). A trust fund is not exactly "mammon," but an attorney's duty of loyalty to his client is very nearly sacred.
 
 CONCLUSION
 
 25
 The order of summary judgment in favor of and the award of attorney's fees to the Trust Fund are REVERSED, and the case REMANDED to the district court with instructions to enter judgment in favor of Klemick.