**HOTEL EMPLOYEES & RESTAURANT EMPLOYEES INTERNATIONAL UNION WELFARE FUND, a multiemployer employee benefit fund; Edward T. Hanley; Patrick J. Kane, as Trustees, Plaintiffs–Appellants,**

v.

**Virgil GENTNER; Virgil R. Gentner, Chartered, a Professional Corporation, Defendants–Appellees.**

No. 93–15684.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 17, 1994 *.

Decided March 21, 1995.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Diana L.S. Peters, Feder & Associates, Washington, DC, for plaintiffs-appellants.

James R. Olson, Rawlings, Olson & Cannon, Las Vegas, NV, for defendants-appellees.

Before: LAY,** PREGERSON, and O'SCANNLAIN, Circuit Judges.

LAY, Circuit Judge:

The Hotel Employees and Restaurant Employees International Union Welfare Fund, et al. ("the Fund") appeal the district court's dismissal of their claims against Virgil R.

** Honorable Donald P. Lay, Senior Circuit Judge

Gentner, an attorney representing Joseph K. Newell, a Fund beneficiary.

## BACKGROUND

On April 2, 1987, a car struck and severely injured Newell. At the time, Newell was a participant in Plan Unit 150 of the Fund, which provides benefits to eligible covered employees in the Las Vegas area. Neither party disputes that the Fund is a "Plan" subject to the provisions of the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. §§ 1001–1461.

The Fund asserted in its complaint that it paid $90,544.16 of Newell's medical expenses after the accident. In connection with this payment, the Fund required Newell to provide a statement detailing the accident and to execute a subrogation agreement. In the agreement, Newell agreed to reimburse the Fund for all expenditures it made on his behalf if he recovered any monies from the other driver or the driver's insurer, Travelers Indemnity Insurance Company ("Travelers").

Newell executed the agreement on July 13, 1987. Typed on the bottom of this agreement is the following statement: "This document is executed under portest [sic] as outlined in that certain correspondence dated July 20, 1987 from Virgil R. Gentner." Gentner served as Newell's attorney at the time and represented Newell in connection with this accident.

In March 1988, Gentner, on behalf of Newell, entered into a settlement with Travelers for the sum of $725,000. After Gentner received the money, a lien on behalf of Humana Hospital in the amount of $135,000 was satisfied, and the remaining $589,936.74 was divided between Newell and Gentner.

The Fund filed suit on July 9, 1992, claiming Gentner was obligated to repay it $90,-544.16 out of the settlement money received from Travelers. Count I of the Fund's complaint stated that Gentner and his law firm violated the terms of the Plan and ERISA. Specifically, the Fund asserted that, under 29 U.S.C. § 1132(a)(3), it could recover for Gentner's failure to reimburse it because he

for the Eighth Circuit, sitting by designation.

knew of the subrogation agreement and then violated its terms.[1] Count II of the Fund's complaint stated that Gentner should be considered "a fiduciary" under ERISA, 29 U.S.C. § 1002(21)(A), because he exercised discretionary authority over fund assets.[2] In addition, the Fund claimed that Gentner is personally liable to it under 29 U.S.C. § 1109(a) because he breached his fiduciary duty by failing to honor the subrogation agreement.[3] On November 10, 1992, Gentner filed a motion to dismiss for failure to state a claim upon which relief can be granted. He argued § 1132(a)(3) is not available to the Fund because he has no professional or contractual relationship with it. He also contended that, as a matter of law, a beneficiary's attorney cannot be a fiduciary to the Fund under § 1002(21)(A). The district court granted Gentner's motion to dismiss under Fed.R.Civ.P. 12(b)(6), finding the Fund failed to state a claim upon which relief could be granted. *See Hotel Employees Int'l Union Welfare Fund v. Gentner*, 815 F.Supp. 1354 (D.Nev.1993). The Fund now appeals arguing it has raised cognizable ERISA claims. We affirm the judgment of the district court.

## DISCUSSION

### I.

The Fund claims under Count I that § 1132(a)(3) does not require it to have a professional or contractual relationship with Gentner for him to violate the "terms of the plan." It is well settled that when ERISA is silent on an issue, we may turn to state law to fashion the appropriate federal common-law rule. *See, e.g., Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382, 386 (9th Cir.1994). State-law authorities hold that, absent a specific statutory directive, a beneficiary's attorney is not bound to the terms of a client's subrogation agreement to which he is not a signatory. *See, e.g., Travelers Ins. Co. v. Haden*, 418 A.2d 1078, 1084–85 (D.C. 1980) (determining that absent an express or implied contract with the beneficiary's attorney, an insurer cannot hold the attorney liable for disbursing settlement proceeds to the beneficiary); *Blue Cross v. Travaline*, 398 Mass. 582, 499 N.E.2d 1195, 1200 (1986) (stating that unless funds or property received by an attorney are earmarked for the insurer or a statute requires otherwise, the "attorney is not required to serve as a collection agent for his client's insurance carrier"); *Great Am. Ins. Co. v. Spoden*, 316 N.W.2d 740, 743 (Minn.1982) (concluding that beneficiary's law firm is not liable because it has no duty to preserve insurance carrier's subrogation interest); *Hartford Accident & Indem. Co. v. Rogers*, 96 Nev. 576, 613 P.2d 1025, 1027 (1980) (finding that absent a professional relationship between a beneficiary's attorney and insurer, the insurer has no action against the attorney to recover proceeds of a check sent for payment of the beneficiary's hospital bills). A subrogation agreement or lien can be enforced against the attorney *only* if the attorney agrees with the client and creditor to protect the lien. *See, e.g., Travelers*, 418 A.2d at 1084; *Great Am.*, 316 N.W.2d at 743. Mere notice or knowledge of the subrogation agreement or lien does not constitute an implied contract. *See, e.g., Travelers*, 418 A.2d at 1085; *Great Am.*, 316 N.W.2d at 743. Thus, the Fund's argument that Gentner's actions violated the "terms of the plan" even though there was no professional or contractual relationship between the

---

1. 29 U.S.C. § 1132(a)(3) provides:
   A civil action may be brought ...
   (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter of the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan....

2. Section 1002(21)(A) states, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such

plan or exercises any authority or control respecting management or disposition of its assets...."

3. Section 1109(a) provides in pertinent part;
   "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach ... and shall be subject to such other equitable or remedial relief as the court may deem appropriate...."

Fund and Gentner is not supported by the law governing subrogation agreements.

Furthermore, there is no indication Congress intended to extend ERISA liability to parties with no professional or contractual relationship with a plan. Without some expression of such an intent, we will not extend liability under a subrogation agreement so far beyond its traditional reach.

The Fund cites a number of cases it claims support the argument that a nonsignatory may be liable under ERISA for a signatory's contractual obligations. The key ingredient in each of these cases is that the interests of the nonsignatory and signatory parties are materially inseparable. *See, e.g., Leddy v. Standard Drywall, Inc.* 875 F.2d 383, 387–88 (2nd Cir.1989) (finding ERISA claims against a nonsigning shareholder and officer of a contracting business may be valid if the individual is the alter ego of the business); *Alman v. Danin,* 801 F.2d 1, 4 (1st Cir.1986) (holding shareholders or officers can be liable for the company's delinquent contributions to an ERISA plan if the corporate veil should be pierced and justice would be served); *Carpenters Local Union No. 1846 v. Pratt–Farnsworth, Inc.* 690 F.2d 489, 526 (5th Cir. 1982) (stating a nonsignatory company can be held liable if it is a joint employer with the signing company), *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983); *Galgay v. Gangloff,* 677 F.Supp. 295, 298 (M.D.Pa. 1987) (concluding plaintiff plan stated a cause of action against an executive officer of a company, based on the alter ego relationship between the officer and business), *aff'd,* 932 F.2d 959 (3d Cir.1991).

We find, however, that the attorney-client relationship is distinguishable from these "alter ego" relationships. In each of the cited cases, the signatory was really the same as, or acting on behalf of the nonsignatory, so the acts of the former clearly bound the latter. In the instant case, however, Newell, the client and principal, obviously did not enter the subrogation agreement on behalf of Gentner, his attorney and agent. In addition, although an attorney owes a client a duty of loyalty, this duty does not flow the other direction and certainly does not make the lawyer and client indistinguishable or materially inseparable. Thus, Newell and Gentner are not "alter egos," and the cases cited by the Fund are therefore inapposite.

For these reasons, we find the Fund's arguments unconvincing. The district court's dismissal of Count I is affirmed.

## II.

■ The Fund also contends the district court erred in dismissing, under Count II, its claim that Gentner breached a fiduciary duty to the Fund. Initially, it argues that Congress intended courts to construe broadly the term "fiduciary" as defined under § 1002(21)(A). In its brief, the Fund relies heavily on *Chapman v. Klemick,* 750 F.Supp. 520, 523–24 (S.D.Fla.), *rev'd,* 3 F.3d 1508 (11th Cir.1993), *cert. denied,* ―― U.S. ――, 114 S.Ct. 1191, 127 L.Ed.2d 541 (1994), in which a Florida district court found a beneficiary's attorney liable for failure to pay settlement proceeds owed to a fund under a subrogation agreement and deposited in the attorney's account. 750 F.Supp. at 524. The court reasoned settlement monies collected from a third-party tortfeasor became "assets of the plan" under the subrogation agreement. *Id.* at 522. Because the attorney managed and controlled these "assets of the plan," he served as a fiduciary under the terms of § 1002(21)(A), and breached his correlative duty by failing to reimburse the plan. *Id.* at 524. The Fund contends the closely analogous facts in this context call for a similar holding.

Of course, *Chapman* has now been reversed by the Eleventh Circuit. *See* 3 F.3d at 1511. We are in agreement with our sister circuit's well-reasoned analysis. The Eleventh Circuit first pointed out that no ERISA provision, regulation, or previous judicial decision imposes fiduciary liabilities on a plan beneficiary's personal injury attorney. *Id.* In addition, the court relied on this Court's decision in *Nieto v. Ecker,* 845 F.2d 868 (9th Cir.1988). *See Chapman,* 3 F.3d at 1511. In *Nieto,* we held an attorney does not acquire fiduciary status merely because he was retained by a group of ERISA plans to collect delinquent contributions from member employers. 845 F.2d at 871. We rejected

the plans' assertion that the attorney's failure to collect sums owed to the trust fund imposed fiduciary liability under ERISA because it caused a dissipation of trust fund assets. *Id.* We stated this argument "proves far too much," because "[u]nder this rationale anyone performing services for an ERISA plan—be it an attorney, an accountant, a security guard or a janitor—would be rendered a fiduciary insofar as he exercised some control over trust assets and through negligence or dishonesty jeopardized those assets." *Id.* at 870–71. Thus, although we do not question that Congress intended courts to construe broadly the term "fiduciary" in § 1002(21)(A), we believe imposing such a duty on anyone who comes into contact with potential assets of the plan would far exceed any reasonable interpretation of Congress's intent.

Moreover, we agree with the Eleventh Circuit that "the arguments against imposing fiduciary status on an attorney who represents a trust fund *beneficiary* [are] even more compelling than those against imposing fiduciary status on ... attorneys who render advice or services to an ERISA plan or trust fund." *Chapman,* 3 F.3d at 1511. Imposing such status on attorneys representing beneficiaries would place these attorneys in the "untenable position" of owing fiduciary duties to both their clients and the ERISA plans. *See id.* at 1512. As in this case, the interests of beneficiaries and plans are often adverse. An attorney's dual service to such adverse parties would not only violate local ethical rules, but also would place the attorney at risk of violating ERISA's requirement that fiduciaries act solely in the interests of participating plans.[4] *See* 29 U.S.C. § 1106(b).[5] Thus, we agree with the Eleventh Circuit

that Congress did not intend to extend ERISA's fiduciary status that far.

We therefore hold that because Gentner does not fall within ERISA's definition of "fiduciary," Count II of the Fund's complaint was also properly dismissed. In so holding, we need to not resolve whether Gentner's handling of the funds violated any local rules of professional conduct.

Judgment AFFIRMED.

---

**4.** The Fund nevertheless contends that there was no conflict here because Gentner breached his ethical obligations by failing to notify it upon receipt of the settlement monies and by turning over the monies to Newell. This argument misses the point. Whether Gentner violated an ethical obligation or duty does not support the conclusion that he has a fiduciary duty to the Fund or that he has breached it. Because we find imposing a fiduciary duty on a beneficiary's attorney to act on behalf of an ERISA plan would create conflicting loyalties to potentially adverse parties, we conclude Gentner neither had nor breached any such duty to the Fund.

**5.** Section 1106(b) states in pertinent part:

A fiduciary with respect to a plan shall not ... (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.