**HEALTH COST CONTROLS OF ILLINOIS, INC., Plaintiff–Appellee,**

v.

**Valerie WASHINGTON, Defendant–Appellant.**

No. 98–3241.

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1999.

Decided Aug. 10, 1999.

Timothy M. Kelly (argued), Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and EASTERBROOK and MANION, Circuit Judges.

POSNER, Chief Judge.

Health Cost Controls brought suit against Valerie Washington, a participant in an employee welfare plan sponsored by her employer but administered in relevant part first by Michael Reese Health Plan, Inc. and later, when Humana bought Michael Reese, by Humana Health Plan, Inc. The suit sought reimbursement of certain benefits that the plan had paid her. The plan assigned its claim to Health Cost, which is why Health Cost is the plaintiff, rather than the plan. The case has a tangled history that raises jurisdictional issues. Ten years ago Washington was injured in an auto accident with an uninsured motorist. The plan paid her medical expenses. She obtained another $60,000—including $10,580.15 for medical expenses—from an automobile insurance policy that provided uninsured-motorist benefits. The insurance company's check for the medical expenses, rather than being made out just to her, was made out to her and Health Cost jointly, because of the latter's claim to be entitled to this money to reimburse it for having paid Washington's medical bills. Washington's lawyers deposited the check in an interest-bearing escrow account (where it remains to this day) pending a determination of which of the payees was entitled to it. Health Cost took the position that the terms of the plan entitled it to this money as subrogee. Washington disagreed and brought suit in an Illinois state court against Health Cost and the plan for a declaration that she was entitled to keep the money. Health Cost removed the suit to federal district court, basing federal jurisdiction on ERISA. See 29 U.S.C. § 1132(a); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Speciale v. Seybold*, 147 F.3d 612, 615 (7th Cir.

1998). The district judge, disagreeing that it was an ERISA suit, remanded the case to the state court. *Washington v. Humana Health Plan, Inc.*, 883 F.Supp. 264 (N.D.Ill.1995). Two months later, Health Cost brought the present suit, which seeks primarily a declaration that the money in the escrow account belongs to it, and obtained summary judgment, precipitating this appeal. The state court recently dismissed Washington's suit, without prejudice, because of the pendency of Health Cost's parallel federal case.

 There is, to begin with, a question of our appellate jurisdiction. The judgment order entered by the district court merely states that the plaintiff's motion for summary judgment is granted and that "this case is closed." The grant of summary judgment is not, however, the entry of a judgment, despite the name, *Massey Ferguson Division of Varity Corp. v. Gurley*, 51 F.3d 102, 104 (7th Cir.1995); *Abbs v. Sullivan*, 963 F.2d 918, 923 (7th Cir.1992); *Landry v. G.B.A.*, 762 F.2d 462 (5th Cir.1985) (per curiam), and despite the misleading statement in the Wright and Miller treatise that "a summary judgment completely disposing of all claims among all parties is final, *just as any other such judgment.*" 15B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3914.28, p. 203 (2d ed.1992) (emphasis added). A judgment in favor of a plaintiff is a statement of the relief being ordered; if in favor of the defendant, it is ordinarily a statement that the plaintiff's suit is dismissed; in either case the judgment is the bottom line. *Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 422 n. 8 (7th Cir.1998); *Massey Ferguson Division of Varity Corp. v. Gurley, supra,* 51 F.3d at 104; *United States v. Menendez*, 48 F.3d 1401, 1408–09 (5th Cir.1995) (per curiam). Summary judgment is not relief. It is merely a procedural premise for relief. The relief is whatever the party moving for summary judgment was seeking and the court agrees the party is entitled to.

There are two specific ways in which the grant of a motion for summary judgment will often fail to satisfy the criteria for an appealable order. The first is lack of finality, and the second lack of definiteness. *United States v. Allen,* 155 F.3d 35, 39 (2d Cir.1998); 15B Wright, Miller & Cooper, *supra,* § 3914.28, pp. 204–06. Summary judgment, we repeat, is not a judgment; but if the judge indicates, as he seems to have done here when he said "this case is closed," that the grant of summary judgment is the last order he plans to enter—that he has finished with the case—then the grant becomes the final order in the case and objections based on lack of finality fall away. E.g., *Massey Ferguson Division of Varity Corp. v. Gurley, supra,* 51 F.3d at 105; *Abbs v. Sullivan, supra,* 963 F.2d at 923. Such a summary judgment order may also be sufficiently definite to be appealable. The clearest case would be where the judge granted summary judgment to the defendant and accompanied the grant with a statement that the case was closed. It would be clear both that the order was final and that it amounted to a dismissal of the suit. E.g., *Minnesota v. Kalman W. Abrams Metals, Inc.,* 155 F.3d 1019, 1023 (8th Cir.1998). The absence of a formal judgment order (see Fed. R. Civ. Pro. 58) would not affect our jurisdiction. E.g., *Shalala v. Schaefer,* 509 U.S. 292, 303, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993); *Richmond v. Chater,* 94 F.3d 263, 266 (7th Cir.1996); *Massey Ferguson Division of Varity Corp. v. Gurley, supra,* 51 F.3d at 105.

When, however, the grant of summary judgment is in favor of a plaintiff who is seeking a money judgment, then failure to enter an order directing the defendant to pay a specified sum may indeed be an event of jurisdictional significance. For it may leave unclear just what the judge has decided. It did here. The judge may have thought the amount of Health Cost's entitlement too obvious to warrant writing down the number of dollars that Valerie Washington must pay. He was wrong. What a plaintiff asks for in his complaint and what he is entitled to by way of judgment need not be the same number even if he wins the case, if only because a plaintiff often is entitled to prejudgment interest, *Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 410 (7th Cir.1999); *Gorenstein Enterprises, Inc. v. Quality Care–USA, Inc.,* 874 F.2d 431, 436 (7th Cir.1989); *Motion Picture Ass'n of America, Inc. v. Oman,* 969 F.2d 1154, 1157 (D.C.Cir.1992), the amount of which cannot be determined until the judgment is entered. If a request for prejudgment interest is made in the district court we do not have appellate jurisdiction over a judgment in favor of the plaintiff until the district court acts on the request, *Osterneck v. Ernst & Whinney,* 489 U.S. 169, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989), unless, possibly, only a mechanical calculation is required, that is, there is no issue concerning entitlement or amount. E.g., *Production & Maintenance Employees' Local 504 v. Roadmaster Corp.,* 954 F.2d 1397, 1401–02 (7th Cir.1992); *Pratt v. Petroleum Production Management, Inc. Employee Savings Plan & Trust,* 920 F.2d 651, 656 (10th Cir.1990).

Maybe the judge was confused by the fact that Health Cost asked for a declaratory judgment rather than an order to pay. Rather than trying to collect money directly from Washington, who for all we know doesn't have any and who in any event might not be suable for damages under ERISA (a question we need not decide, however), Health Cost wants to get its paws on the money in the escrow account, which Washington does not control. It wants a declaration that it can take to the escrow agent as proof that the agent should turn over the money to it. But all this means is that instead of ordering the defendant to pay a specified sum of money to the plaintiff, the judge should have declared the plaintiff's right to a specified sum of money, or, alternatively and equivalently, to the balance in the escrow ac-

count. A declaratory judgment declares the rights of the parties; it does not "declare" merely that one of the parties has obtained summary judgment.

██ The requirement that the judgment make clear what the plaintiff is or is not entitled to is not a niggling, petty technicality; it is not a technicality at all. When there is uncertainty as to what the plaintiff is entitled to, the seeds of piecemeal appealing are sown; an appeal from an order entered during the postjudgment collection phase of a lawsuit is likely if the amount to be collected remains in dispute after the judgment has been affirmed. As bad as multiple appeals in the same case is uncertainty when and whether an appeal is possible. When a defective judgment is entered, the parties' lawyers have a duty, not here fulfilled, as officers of the court to advise the judge of the need to enter a proper, amended judgment. Cf. *Richmond v. Chater, supra*, 94 F.3d at 267.

██ But when it is clear both that the district court has resolved the parties' legal dispute and what the terms of that resolution are, that resolution is appealable as a final decision within the meaning of 28 U.S.C. § 1291 even if there is no simple, concise statement of just what the judgment is. E.g., *Metzl v. Leininger*, 57 F.3d 618, 619–20 (7th Cir.1995); *Abbs v. Sullivan, supra*, 963 F.2d at 923; *Vona v. County of Niagara*, 119 F.3d 201, 206 (2d Cir.1997). That's the case here. It may have been unclear when the district court entered "judgment" just how much interest Health Cost would be entitled to (if we affirmed) on the $10,580.15 that had been sitting in the escrow account since the spring of 1994; but at the argument of the appeal, the parties agreed—consistent with Health Cost's having cast its request for relief in terms of a declaration of its entitlement to the escrowed money—that if we affirm, Health Cost is entitled to whatever money is sitting in the account, neither more nor less. The parties having thus removed the ambiguity in the district court's judgment, that judgment is appeal-

able. *J.D. Pharmaceutical Distributors, Inc. v. Save–On Drugs & Cosmetics Corp.*, 893 F.2d 1201, 1208 (11th Cir.1990); *O'Boyle v. Jiffy Lube Int'l, Inc.*, 866 F.2d 88, 92 (3d Cir.1989); 15B Wright, Miller & Cooper, *supra*, § 2914.28, pp. 203–04.

██ There is also a question—actually there are several questions—about the district court's jurisdiction. The first and least is whether the earlier remand of Washington's mirror-image suit to state court on the ground that it was not within federal jurisdiction is res judicata in this suit. Health Cost argues not, on the erroneous ground that a dismissal (which the remand order had the effect of) for want of jurisdiction cannot have any res judicata effect because a ruling by a court that lacks jurisdiction over the case is a nullity. That is an oversimplification. A ruling by a court that it lacks jurisdiction is res judicata on the issue of that court's jurisdiction (provided—an essential qualification, as we're about to see—that res judicata is otherwise proper). A court is competent to decide its own jurisdiction even though it is not competent to decide the merits of a case over which it lacks jurisdiction. *Okoro v. Bohman*, 164 F.3d 1059, 1062–63 (7th Cir.1999).

██ An *unappealable* ruling, however, is not res judicata, *Warner/Elektra/Atlantic Corp. v. County of DuPage*, 991 F.2d 1280, 1282 (7th Cir.1993); *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 359–60 (3d Cir.1999); *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 394–96 (5th Cir.1998); *Restatement (Second) of Judgments* § 28(1) (1980), and the district court's remand order was unappealable because the ground was lack of subject-matter jurisdiction. See 28 U.S.C. §§ 1447(c), (d); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 711–12, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996); *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 345–46, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976); *In re Florida Wire & Cable Co.*, 102 F.3d 866 (7th Cir.1996). So the order doesn't con-

clude the issue whether the district court has jurisdiction over Health Cost's new and materially identical suit. *Nutter v. Monongahela Power Co.*, 4 F.3d 319, 322 (4th Cir.1993); *Southern Leasing Corp. v. Tufts*, 167 Ariz. 133, 804 P.2d 1321 (1991); cf. *Winters v. Diamond Shamrock Chemical Co.*, *supra*, 149 F.3d at 395–96; but cf. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 492 (5th Cir.1996).

 Washington next argues that Health Cost is not an ERISA fiduciary; and if not, Health Cost concedes, its suit is not an ERISA suit and there is no federal jurisdiction. An ERISA fiduciary is, so far as bears on this case, anyone who has substantial control over the assets, management, or administration of an ERISA plan. 29 U.S.C. § 1002(21)(A); *Lockheed Corp. v. Spink*, 517 U.S. 882, 890–91, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996); *Varity Corp. v. Howe*, 516 U.S. 489, 502–03, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Health Cost was hired by the plan administrator to administer the plan's claims for reimbursement from participants, such as Washington, who compares Health Cost to a lawyer hired by an ERISA plan to bring a suit on the plan's behalf. That lawyer would not be an ERISA fiduciary, *Associates in Adolescent Psychiatry, S.C. v. Home Life Ins. Co.*, 941 F.2d 561, 570 (7th Cir.1991); *Hotel Employees & Restaurant Employees International Union Welfare Fund v. Gentner*, 50 F.3d 719 (9th Cir. 1995); *Useden v. Acker*, 947 F.2d 1563, 1577–79 (11th Cir.1991); *Nieto v. Ecker*, 845 F.2d 868, 870–71 (9th Cir.1988); 29 C.F.R. § 2509.75–5, even though a lawyer is a fiduciary of his client. E.g., *In re Marriage of Pagano*, 154 Ill.2d 174, 180 Ill.Dec. 729, 607 N.E.2d 1242, 1247 (1992); *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir.1996). Just why a pension plan's lawyer should be excused from ERISA fiduciary status is a little obscure, but in *Associates in Adolescent Psychiatry* we suggested that it was because lawyers and other professionals who render services to the plan's administrator do not

exercise "any decisionmaking authority over the plan or plan assets; the power to act for the plan is essential to status as a fiduciary under ERISA." 941 F.2d at 570. Lacking such power, there is less need in the interest of the plan to hedge the lawyer about with rules designed to assure that a fiduciary act with utmost loyalty and competence. Moreover, a professional who renders services to an ERISA plan is subject to whatever fiduciary or other duties his profession imposes upon him. An additional layer of fiduciary duty, the duty of an *ERISA* fiduciary, might add more to the expense of pension plans than to the safety of their assets—though along with the burden of being an ERISA fiduciary comes the advantage of access to the federal courts; that of course is where Health Cost wants to be.

Not being the plan's lawyer, Health Cost is not subject to the fiduciary duties that a lawyer has to his client. Yet it has considerably more discretion than the plan's lawyer, and this argues for making Health Cost a fiduciary on some other basis, namely ERISA. Assigned whatever legal claims the plan might have rather than merely retained to prosecute them as the plan's agent, Health Cost does not consult with the administrator on whether to take legal action, as in the ordinary lawyer-client setting. By virtue of the assignment, the claims become Health Cost's property and Health Cost determines in its sole discretion which ones are meritorious and what to do to collect them. This is a broader power than that of a lawyer hired to handle a claim, or of an ordinary collection agent. Compare *Moores v. Greenberg*, 834 F.2d 1105, 1108 (1st Cir. 1987). Answering a question left open in a previous case brought by Health Cost, *Health Cost Controls v. Skinner*, 44 F.3d 535, 537 n. 3 (7th Cir.1995), we hold that Health Cost is an ERISA fiduciary.

We are helped to this conclusion by a desire not to interfere with the widespread practice (see, e.g., 1 Jeffrey D. Mamorsky, *Employee Benefits Handbook* § 3.06, p. 3–

28 (1998)), clearly contemplated by the statute itself (see 29 U.S.C. §§ 1002(16)(A), 1103(a)(2); 29 C.F.R. § 2509.75–8FR-12; Jay Conison, *Employee Benefit Plans in a Nutshell* 13, 206 (2d ed.1998)) and so far as we know salutary, of splitting up the various functions involved in the administration of an ERISA plan among specialized providers of service. (That is illustrated here not only by the plan administrator's retention of Health Cost, but of the delegation by Washington's employer of the administration of a part of its employee welfare plan to another entity—Reese, succeeded by Humana.) To deny such specialists access to the federal courts under ERISA because they lack the full range of responsibilities of a traditional trustee would impede what appears to be an efficiency-promoting fractionating of fiduciary responsibilities that is consistent with an economy-wide trend toward specialization.

▆▆▆▆ Washington also argues that the district court had no jurisdiction because the relief sought by Health Cost is not equitable, and ERISA authorizes only suits by fiduciaries that seek equitable relief. 29 U.S.C. § 1132(a)(3); *Mertens v. Hewitt Associates*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993); *Reich v. Continental Casualty Co.*, 33 F.3d 754, 755 (7th Cir.1994). One reply by Health Cost is that its suit is for restitution and that restitution is an equitable remedy. That is not true, although the point is sometimes overlooked, *Harris Trust & Savings Bank v. Provident Life & Accident Ins. Co.*, 57 F.3d 608, 615–16 (7th Cir.1995); *Health Cost Controls v. Skinner, supra*, 44 F.3d at 537 n. 5; *Schwartz v. Gregori*, 45 F.3d 1017, 1022–23 (6th Cir.1995), partly because of an unfortunate and surely unintended dictum in *Mertens*, that the plaintiffs were not seeking "a remedy traditionally viewed as 'equitable,' such as injunction. *or restitution*." 508 U.S. at 255, 113 S.Ct. 2063 (emphasis added). As we explained in *Continental Casualty*, restitution is a legal remedy when

sought in a case at law and an equitable remedy when sought in a case in equity. *Reich v. Continental Casualty Co., supra*, 33 F.3d at 755. (There really isn't any question about this. See 1 Dan R. Dobbs, *Law of Remedies: Damages—Equity—Restitution*, § 1.2, p. 11; § 4.1(1), p. 556; § 4.1(3), pp. 564–65; §§ 4.2–.3 (2d ed.1993).) But as we also explained, when sought as a remedy for breach of fiduciary duty restitution is properly regarded as an equitable remedy because the fiduciary concept is equitable. In this case, however, Health Cost, although a fiduciary, is not relying on a breach of fiduciary duty as the basis for its action. Washington, the defendant, is not a fiduciary and so is not accused of any breach of fiduciary duty.

▆▆▆▆ She argues that this is a suit for damages and such a suit is of course legal, not equitable, as emphasized in *Mertens v. Hewitt Associates, supra*. But Health Cost is not seeking damages, or indeed any form of payment, from Washington. What it is seeking is best described as the imposition of a constructive trust on the money in the escrow account, see 1 Dobbs, *supra*, § 4.3(2), or, alternatively and equivalently, as we are about to see, on Washington's claim to the money; and Health Cost argues constructive trust as an alternative basis to restitution for its claim. A constructive trust is, of course, an equitable remedy. E.g., *Filipowicz v. American Stores Benefit Plans Comm.*, 56 F.3d 807, 812 (7th Cir.1995); *Health Cost Controls v. Skinner, supra*, 44 F.3d at 538 n. 7; *Anweiler v. American Electric Power Service Corp.*, 3 F.3d 986, 993 (7th Cir.1993); *Bast v. Prudential Ins. Co.*, 150 F.3d 1003, 1010–11 (9th Cir.1998). It is true that normally the defendant is sought to be made the (involuntary) trustee of money that is in his or her own custody, see, e.g., *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 122 N.E. 378, 380 (1919) (Cardozo, J.), while what Health Cost is seeking is a constructive trust in Washington's *claim* to the money in the escrow

account. But if she is declared to be holding that claim in trust for Health Cost, then the latter can take the declaration to the escrow agent and get the money from him. The device of a constructive trust has often been used in just this way to transfer the beneficial interest from one joint account holder to another. *Hall v. Superior Federal Bank*, 303 Ark. 125, 794 S.W.2d 611, 617 (1990); *Potts v. Emerick*, 293 Md. 495, 445 A.2d 695 (1982); *First National Bank v. Curran*, 206 N.W.2d 317 (Iowa 1973); *Vesey v. Vesey*, 237 Minn. 295, 54 N.W.2d 385 (1952).

So Health Cost is indeed seeking a constructive trust and while the Ninth Circuit appears to believe that the imposition of a constructive trust in an ERISA case is permissible only when there has been a breach of trust, *FMC Medical Plan v. Owens*, 122 F.3d 1258, 1261 (9th Cir.1997), it has given no reason for this belief and there is no basis for it either in ERISA or in the principles of equity. Granted that in times of yore the constructive trust was available only as a remedy against trustees and other fiduciaries, 1 Dobbs, *supra*, § 4.3(2), p. 597, there is nothing to suggest that ERISA's drafters wanted to embed their work in a time warp. In ordinary trust law the historical limitation of the remedy has been abandoned. *Id.*, § 4.3(2), pp. 597–98; 5 Austin Wakeman Scott & William Franklin Fratcher, *Scott on Trusts* § 462 (4th ed.1989). We do not think the motto of our law should be "let the dead bury the living." Alternative characterizations of Health Cost's claim (alternative to both restitution and constructive trust)—as seeking to impose an equitable lien on the escrow account or seeking a mandatory injunction directing Washington to sign over her claim to the money—are also permissible, moreover, and they reinforce our conclusion that Health Cost's claim is securely equitable and so within the jurisdiction conferred on the district court by ERISA.

■ With all jurisdictional issues resolved we arrive at last at the merits.

The question here is whether the plan documents entitle the plan to reimbursement for medical expenses that are paid to a participant in accordance with an insurance policy that provides coverage for an injury inflicted by an uninsured motorist. The plan itself is perfectly clear on this point. It says that the plan will cover the expense of "medical services for injury caused by a third party.... However, [the plan] has the right to be reimbursed for the value of services it has provided when a beneficiary receives payment from a third party," here the insurer. The summary plan description, however, says that the plan "will provide medical services and treatment for injuries caused by a third party. You must, however, assign to the [plan] all rights to obtaining reimbursement from *the third party* for medical services provided by or through the [plan]" (emphasis added). Read literally, this implies that the only reimbursement the plan can seek is from the injurer (the third party who causes the injury), who in this case was an uninsured motorist. When, however, the plan and the summary plan description conflict, the former governs, being more complete—the original, as it were, which the summary plan description excerpts and translates into language that may be imprecise because it is designed to be intelligible to lay persons—unless the plan participant or beneficiary has reasonably relied on the summary plan description to his detriment. *Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1022–24 (7th Cir.1998); *Senkier v. Hartford Life & Accident Ins. Co.*, 948 F.2d 1050, 1051 (7th Cir.1991); *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1518–19 (10th Cir.1996); *Aiken v. Policy Management Systems Corp.*, 13 F.3d 138, 140 (4th Cir.1993).

■ We need not get into the issue of reliance here, or weigh the significance of the fact that the summary plan description states that "in case of a conflict or discrepancy between this booklet and the actual Plan provisions, the provisions of the Plan

will govern your rights and benefits." For there is no conflict between the descriptions. Washington's interpretation of the passage that we quoted from the summary plan description makes no sense. The obvious purpose of the quoted language is to prevent double payment for the same claim. Had Washington been hit by an insured motorist, she would, she concedes, have been obligated to allow Health Cost to obtain reimbursement for the plan's medical expenses from the motorist, which is to say, as a practical matter, the motorist's insurer. We cannot fathom why it should make any difference if the motorist happens not to have any insurance, so that the victim's insurer picks up the slack. The quoted language is merely a clumsy paraphrase of the clear language of the plan itself. Senseless interpretations of ERISA summary plan descriptions as of other contractual documents should be rejected. E.g., *Grun v. Pneumo Abex Corp.*, *supra*, 163 F.3d at 420; *Delgrosso v. Spang & Co.*, 769 F.2d 928, 936 (3d Cir. 1985); see generally *Level 3 Communications, Inc. v. Federal Ins. Co.*, 168 F.3d 956, 958 (7th Cir.1999).

One loose end remains to be tied up, however. Although we have spoken of "the plan itself" and quoted language from the summary plan description referring to "the Plan," Washington denies that the plan, on which Health Cost necessarily predicates its claim for reimbursement, was ever placed in evidence. What we (and Health Cost) have called "the plan" is a document entitled "Subscriber's Service Agreement," which is in the record but which states that it (like the summary plan description) is only a "summary" and that the "Group Service Agreement," which is not in the record, is the real plan document.

This kind of confusion is all too common in ERISA land; often the terms of an ERISA plan must be inferred from a series of documents none clearly labeled as "the plan." See, e.g.; *Milwaukee Area Joint Apprenticeship Training Comm. v.*

*Howell*, 67 F.3d 1333, 1338 (7th Cir.1995); *Horn v. Berdon, Inc. Defined Benefit Pension Plan*, 938 F.2d 125 (9th Cir.1991) (per curiam). An uncontested affidavit in the record states that the Subscriber's Service Agreement, which is what Health Cost is treating as the plan, indeed provided the basis for administering the employee welfare plan. It is also uncontested that the "full benefits" that Washington received were determined in accordance with that document. Whether the Group Service Agreement even exists (it may have been issued by Michael Reese and lost in the shuffle when Humana acquired Reese), and whether if so it differs from the Subscriber's Service Agreement in any respect material to this case, we do not know. But having obtained benefits in accordance with the latter agreement, it ill behooves Washington to turn around and deny that the agreement is the authoritative plan document. It is not as if she were offering to reimburse Humana should it turn out that the Group Service Agreement entitles her to fewer benefits than the Subscriber's Service Agreement. Just as the employee welfare plan would be estopped to set up "the plan itself" as a defense to a claim for benefits if Washington had reasonably relied on the language of the summary plan description, so she is estopped to repudiate the plan document on the basis of which she obtained her full benefits, which she wishes to retain.

AFFIRMED.