United States Court of Appeals,

Fifth Circuit.

Nos. 93-3709, 93-3710 and 94-30059.

UNITED STATES of America, Plaintiff-Appellee,

v.

Wade E. MENENDEZ, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Raymond E. PLAISANCE, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Tony Dung VAN NGUYEN, Defendant-Appellant.

April 12, 1995.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before POLITZ, Chief Judge, GARWOOD and BENAVIDES, Circuit Judges.

GARWOOD, Circuit Judge:

These consolidated appeals arise from suits by the United States under 16 U.S.C. § 1540 to collect civil penalties assessed by the National Oceanic and Atmospheric Administration (NOAA) against Tony Dung Van Nguyen (Nguyen), Wade Menendez (Menendez), and Raymond Plaisance (Plaisance) for the knowing and unlawful failure to use a qualified turtle excluder device (TED) while shrimping in violation of the Endangered Species Act of 1973, 16 U.S.C. § 1531 *et seq.* (ESA) and the applicable regulations, 50 C.F.R. §§ 227.72(e)(2)(i)(B)(4), 227.72(e)(6)(i). The district court granted summary judgment in favor of the government in each

case.  We reverse and remand.

I. Statutory and Regulatory Background

Congress enacted the ESA in 1973 "to provide for the conservation, protection, restoration, and propagation of species of fish, wildlife, and plants facing extinction."  S.Rep. No. 307, 93th Cong. (1973), U.S.Code Cong. & Admin.News 1973, p. 979.  To achieve this goal, the Secretary of Commerce is charged with determining the endangered or threatened status of certain species. Once a species is designated as endangered, the ESA makes it unlawful for any person to "violate any regulation pertaining to such species or to any threatened species of fish or wildlife listed pursuant to section 1533 of this title and promulgated by ... this chapter."  16 U.S.C. § 1538(a)(1).

On June 29, 1987, NOAA, an agency charged with the ESA's enforcement, promulgated regulations to protect endangered and threatened sea turtles.  Under one such regulation, shrimp trawlers in excess of twenty-five feet trawling in offshore waters from North Carolina to Texas must use approved TEDs during certain times of the year.  50 C.F.R. § 227.72(e).  This Court has upheld the validity of these TED regulations.  *Louisiana ex rel. Guste v. Verity,* 853 F.2d 322 (5th Cir.1988).  The ESA imposes civil and criminal penalties for violations of these regulations.  If a person is found to have knowingly violated any regulation under the ESA, he may be assessed a civil penalty of not more than $12,000 for each violation.  16 U.S.C. § 1540.  A party charged with violating the ESA and its regulations may argue that the assessed

2

penalty should be reduced because of his inability to pay. 15 C.F.R. § 904.108. However, the regulations provide that a party challenging the assessed penalty "has the burden of proving such inability by providing verifiable, complete, and accurate financial information to NOAA." *Id.*

NOAA has also promulgated extensive regulations governing the administrative proceedings for challenging alleged violations of the ESA and the assessment of civil penalties under the Act. 15 C.F.R. §§ 904.100 *et seq.* Under these regulations, NOAA commences the administrative proceedings for assessing a civil penalty by serving the charged party a Notice of Violation and Assessment (NOVA), which includes a concise statement of the facts claimed to underlie the alleged violation, a reference to the statutory or regulatory violation alleged, the findings and conclusions on which NOAA bases the assessment, the amount of the civil penalty assessed, and the party's rights upon receipt of the NOVA. 15 C.F.R. § 904.101. After receiving the NOVA, a party may accept the penalty, seek to have it amended, request a hearing, request an extension of time to respond, or take no action. 15 C.F.R. § 904.102(a). If a party charged takes no action, the NOVA becomes the final decision of NOAA thirty days after service. 15 C.F.R. § 904.104. If a party requests a hearing, the case is assigned to an Administrative Law Judge (ALJ), who is to preside over the proceedings and render a written decision. 15 C.F.R. §§ 904.204, 904.271. The ALJ may "[r]equire a party or witness at any time during the proceeding to state his or her position concerning any

3

issue or his or her theory in support of such position." 15 C.F.R. § 904.204(j). "[I]f the entire record shows" that "there is no genuine issue as to any material fact ... [and] ... the moving party is entitled to summary decision as a matter of law," 15 C.F.R. § 904.210, the ALJ has the power to grant summary decision, either on motion of any party or on his own motion. The ALJ also has the power to dismiss a case for failure to prosecute or defend. 15 C.F.R. § 904.212.

The NOAA regulations provide two avenues of possible appeal for a party to challenge an adverse decision rendered by the ALJ. First, unless the order of the ALJ specifically provides otherwise, a party may file a petition for reconsideration with the ALJ within twenty days of service of the decision. 15 C.F.R. § 904.272. Alternatively, a party may file a petition for discretionary review with the Administrator of NOAA within thirty days of service of the challenged ALJ decision (the Administrator may also decide to review the ALJ decision "upon his or her own initiative"). 15 C.F.R. § 904.273. "Review by the Administrator ... is discretionary and is not a matter of right" and "[t]he Administrator need not give reasons for declining review." *Id.* If the Administrator "declines to exercise discretionary review," the decision of the ALJ becomes final. 15 C.F.R. § 904.273(g). If no petition for discretionary review is filed, and the Administrator does not "issue[ ] an order to review upon his/her own initiative," the decision of the ALJ becomes final thirty days after service. 15 C.F.R. § 904.271(d). If a timely petition for discretionary

4

review is filed, or the Administrator orders review upon his or her own motion, "the effectiveness of the initial [the ALJ] decision is stayed until further order of the Administrator." 15 C.F.R. § 904.273(b). If the Administrator grants review, then the Administrator's ultimate decision "becomes the final administrative decision on the date it is served, unless otherwise provided in the decision." *Id.* § 904.273(i).

II. Nguyen Procedural History

On January 31, 1990, NOAA issued Nguyen a NOVA assessing an $8,000 penalty for the knowing and unlawful failure to use a TED while shrimping aboard the F/V MISS ELIZABETH in the Gulf of Mexico on September 18, 1989.[1] Nguyen's case was assigned to ALJ Hugh Dolan. Considerable disagreement exists concerning what happened at the administrative level. Nguyen asserts that he requested a hearing through his representative, Tee John Mialjevich (Mialjevich), and that he heard nothing more about his case until he received notice of NOAA's final decision against him. Nguyen emphasizes that he is an immigrant struggling with language problems. By contrast, the government asserts that Nguyen participated in the administrative proceedings through a representative.

---

[1]On October 27, 1989, NOAA issued Nguyen a NOVA assessing an $8,000 penalty. The NOVA informed Nguyen that he must respond to the allegations within thirty days of receipt and that failure to respond would constitute a final administrative decision under 15 C.F.R. §§ 904.102, 904.104. Nguyen received the NOVA on November 1, 1989. On January 31, 1990, NOAA issued an amended NOVA in order to give Nguyen an extension of time in which he could request a hearing. Nguyen received the amended NOVA on February 2, 1990.

5

The district court recounted the following summary of the administrative proceedings. After Nguyen requested a hearing through Mialjevich, NOAA scheduled a telephone conference to determine whether there were any factual disputes between the parties. During this March 2, 1990, telephone conference, the ALJ determined that there were no factual disputes. Nguyen subsequently confirmed this by filing a Preliminary Position on Issues and Procedures (PPIP) in which he stated that there were no factual or legal issues in dispute. The ALJ determined that the lack of any factual dispute obviated the need for an evidentiary hearing. On April 16, 1990, the ALJ granted NOAA's motion to hear the case on the written submissions and directed Nguyen to make written submissions by May 4, 1990, and NOAA to reply by May 16, 1990. Nguyen submitted affidavits seeking to establish his inability to pay the assessed penalty.

In his June 19, 1990, decision, the ALJ reiterated that Nguyen had stipulated to the facts presented by NOAA and thus held that the only issue to be determined was Nguyen's financial ability to pay the assessed penalty, an issue on which he bore the burden of proof. The June 19, 1990, decision listed Nguyen's representative as Robert J. McManus (McManus), an attorney with Webster & Sheffield in Washington, D.C.[2] The ALJ noted that Nguyen had

_____

[2]In his motion opposing the government's motion for summary judgment filed in the district court below, Nguyen insisted that he never gave anyone other than Mialjevich authority to represent him and that he never authorized anybody to enter into a stipulation that there were no contested issues of material fact. Moreover, Nguyen asserts that he has never met or spoken with McManus. Indeed, Nguyen states that the first time he ever heard

6

submitted financial statements and other affidavits and documentation of the harsh effects of the regulations requiring the use of TEDs. The ALJ determined that Nguyen's submissions concerning the burdensome qualities of the TED regulations were "inapplicable to these proceedings because ... [s]uch debate as to the legality and effectiveness of the TEDs regulations is not proper here and has been decided by the appropriate forum." The ALJ, however, did consider the financial statements submitted by Nguyen and, after reviewing them, ultimately determined that he had the financial ability to pay the fine. Accordingly, the ALJ found Nguyen liable and assessed the penalty recommended by NOAA. In his decision, the ALJ stated that any petition for review should be filed within thirty days with the Administrator of NOAA.

Nguyen filed a timely petition seeking discretionary review of the ALJ's determination. On February 13, 1991, the Deputy

of McManus was when his current counsel showed him a document signed by McManus stipulating that there were no factual issues in dispute. This document allegedly signed by McManus is not in the district court record (presumably, this document is the above mentioned PPIP).

> In the same motion, Nguyen states that McManus conceded that he never spoke to Nguyen before making an appearance on behalf of him in the administrative proceedings. Nguyen also asserts that McManus explained that he was retained by the Concerned Shrimpers of America (Tee John Mialjevich is the president of the Concerned Shrimpers of America). Finally, Nguyen avers that McManus stated that he furnished Nguyen with copies of all documents that he filed. Nguyen's current counsel stated that he has been unable to verify whether Nguyen actually received these documents from McManus. Although Nguyen raised these factual disputes in the district court, his brief on appeal simply states that he requested a hearing through Mialjevich and heard nothing more until he received notice of the final decision against him.

Undersecretary for Oceans and Atmosphere declined to exercise discretionary review. In his petition for discretionary review, Nguyen argued that the ALJ abused his discretion by refusing to consider the effect of the TED regulations on his ability to pay the penalty and by failing to consider his financial status in light of the evidence that he submitted concerning his inability to pay. However, in his order denying discretionary review, the Deputy Undersecretary stated that Nguyen failed to establish that he suffered or would suffer a financial loss from TED usage that would make him unable to pay the assessed penalty. The Deputy Undersecretary noted that a review of the financial information submitted by Nguyen supported the ALJ's determination that Nguyen had an ability to pay the assessed penalty.[3] Finally, the Deputy Undersecretary concurred in the ALJ's determination that Nguyen's submitted affidavits attacking the validity of the TED regulations were irrelevant because the regulations had withstood judicial scrutiny.[4] The order denying discretionary review also listed McManus as Nguyen's representative and provided for a copy to be sent to him at his Washington office.

When Nguyen failed to pay the assessed penalty after being sent several reminder notices by NOAA, the United States, pursuant

---

[3]The Deputy Undersecretary observed that the record revealed that Nguyen had a net worth of $67,161, that he was able to afford monthly truck payments of $470, and that he had $4,000 equity in a house.

[4]In addition, the Deputy Undersecretary noted that the NOAA regulations state that the ALJ "has no authority to rule on challenges to the validity of regulations promulgated by [NOAA]." 15 C.F.R. § 904.200(b).

to 16 U.S.C. § 1540, instituted this civil action in the district court below on May 4, 1992, to collect the penalty. The government attached certified copies of excerpts of portions of the administrative record to its complaint.[5] The government moved to limit the district court's review to the administrative record, and the district court granted the motion. In its motion to limit the district court's review to the administrative record, the government stated "[t]he administrative record in this case is currently being compiled and will be provided to the court no later than March 22, 1993, at which time plaintiff would file a Motion for Summary Judgment on all its claims." The government concedes that it never filed the administrative record with the district court.[6]

The government then moved for summary judgment, contending that the civil penalty was supported by substantial evidence in the record. Nguyen objected, arguing that the government had failed to produce the administrative record. The only portions of the administrative record available to the district court were the

---

[5]These attached exhibits included the following documents: a January 31, 1990, NOAA letter to Nguyen enclosing a copy of the amended NOVA; the ALJ's June 19, 1990, decision; the Deputy Undersecretary's February 13, 1991, order denying discretionary review; a March 23, 1992, certificate of indebtedness issued by NOAA; two letters from NOAA to McManus advising that his client owed the penalty assessed by the ALJ; four letters from NOAA to Nguyen reminding him that he had failed to pay the penalty assessed by the ALJ. The first letter addressed to Nguyen stated that McManus had informed NOAA that he no longer represented Nguyen but had forwarded NOAA's previous correspondence to him.

[6]In its brief on this appeal, the government states that it has been unable to locate a compiled certified copy of the record.

exhibits attached to the government's complaint. Finding that "there is substantial evidence to support the decision of the Secretary of Commerce," the district court entered a judgment granting the government's motion for summary judgment on November 8, 1993. Nguyen appeals.

III. Menendez and Plaisance Procedural History

On April 6, 1990, NOAA issued Menendez a NOVA assessing a civil penalty of $12,000 for the knowing and unlawful failure to use a TED while shrimping aboard the F/V JERYD ALLEN in the Gulf of Mexico on March 26, 1990. On April 18, 1990, NOAA issued Plaisance a NOVA assessing a civil penalty of $8,000 for a similar violation aboard the F/V CAPT. MENUE in the Gulf of Mexico on March 6, 1990. The NOVAs notified Menendez and Plaisance that they could (1) admit the charged violation, (2) seek to have the NOVA modified to conform to actual facts or law, or (3) request a hearing in writing within thirty days. On June 13, 1990, Menendez and Plaisance requested a hearing through their representative Tee John Mialjevich, the president of Concerned Shrimpers of America and a well-known representative of shrimpers in previous administrative and lobbying matters. The cases were assigned to ALJ Hugh Dolan.

On June 15, 1990, the ALJ issued an order to show cause directing the parties to address the issue of whether Mialjevich should be removed from his representative status. Mialjevich filed a letter opposing the proposal but did not request a hearing. On July 27, 1990, the ALJ issued an order barring Mialjevich from representing Menendez, Plaisance, and others, citing his

10

unsuccessful representation of shrimpers in other administrative hearings and his history of encouraging shrimpers to flout the regulations requiring TEDs. The order instructed that "any submissions or correspondence received [from Tee John Mialjevich] on or after August 1, 1990 relating to the representation of others will not be considered as a timely filing and will be returned without action."

On August 3, 1994, the ALJ issued an order directing Menendez, Plaisance, and others to show cause why their cases should not be disposed of in the same manner as the case of *In the Matter of Tommy V. Nguyen et al.* A copy of the decision in that case was attached to the order.[7] This August 3, 1990, order to show cause instructed Menendez, Plaisance, and others to respond by September 4, 1994, and reiterated that "they may represent themselves, retain Counsel, or appear through a representative other than Mr. Mialjevich." On September 4, 1990, Margaret Mialjevich, Menendez's and Plaisance's new representative, responded to the order to show cause by facsimile, asking the ALJ to "allow[ ] each respondent a chance to redeem themself [sic] in person, in front of you at a

---

[7]Tommy V. Nguyen is not the same person as our Appellant Tommy Dung Van Nguyen. In *Nguyen,* decided on June 14, 1990, the ALJ (also Dolan) recounted the shrimping industry's unsuccessful campaign to repeal or suspend the regulations requiring the use of TEDs. The ALJ also described the hostility of the Concerned Shrimpers of America to the regulations and the activities of its president, Mialjevich, in encouraging the shrimpers to ignore the regulations requiring the use of TEDs. Because he found that the *Nguyen* defendants failed to make any showing that they were unable to pay the fines imposed, the ALJ concluded that the civil penalties proposed in the NOVAs were appropriate. Mialjevich served as the representative for the defendants at the administrative hearing in *Nguyen.*

hearing, where they can each dispute the facts of their case (as seen by themself [sic] ), explain certain circunstances [sic] beyond their control, and their financial status." The ALJ refused to act on Margaret Mialjevich's facsimile, and, without prior notice, by means of a *sua sponte* letter dated September 10, 1990, he returned the facsimile to her with instructions that any future submissions from her, Tee John Mialjevich, or the Concerned Shrimpers of America would be returned without answer. Unlike Tee John Mialjevich, Margaret Mialjevich was summarily disbarred without notice and opportunity to respond.[8] On September 19, 1990, the ALJ dismissed Plaisance's and Menendez's cases for failure to file a timely response to the August 3, 1990, Order to Show Cause. Menendez and Plaisance argue that Margaret Mialjevich's September 4, 1990, facsimile was their timely response to the Order to Show Cause.

Menendez and Plaisance did not file petitions for reconsideration with the ALJ, nor did they file petitions for discretionary review with the Administrator of NOAA.[9] Thus, the

_____

[8]The ALJ's September 10, 1990, letter refers to Margaret Mialjevich as Tee John Mialjevich's wife, but there is nothing in the record to support this. The only submittal by Margaret Mialjevich is signed simply "Margaret Mialjevich" without any indication of marital status. The submittals by Margaret Mialjevich and Tee John Mialjevich do show the same post office box, which is also shown to be that of Concerned Shrimpers of America. Apart from this post office box, the last name in common of "Mialjevich," and their successive representation of Menendez and Plaisance, the record shows nothing at all as to any connection or relationship between Margaret Mialjevich and Tee John Mialjevich.

[9]The ALJ's September 19, 1990, order specifically informed Plaisance and Menendez that if petitions for discretionary review

decision of the ALJ in the Menendez and Plaisance cases became final on October 19, 1990. 15 C.F.R. § 904.271(d). No suits were filed on behalf of Menendez, Plaisance, or others in federal court. On November 26, 1990, NOAA issued a written demand for payment to Plaisance and Menendez. NOAA sent several additional letters to Menendez and Plaisance demanding payment. Menendez and Plaisance did not respond to these demand letters. On May 7, 1992, the government filed suits under 16 U.S.C. § 1540 against Menendez and Plaisance in the district court below to collect the civil penalty assessed by the ALJ, plus interest. The government moved to limit review to the administrative records and for summary judgment in its favor. Menendez and Plaisance did not oppose the government's motion to limit review to the administrative record and moved for summary judgment in their favor, arguing that the ALJ's rejection of their two requests for a hearing constituted a denial of due process.

In a judgment entered on August 23, 1993, the district court granted the government's motions for summary judgment against Menendez and Plaisance. In granting summary judgment in favor of the government, the district court did not reach Menendez's and Plaisance's due process arguments because it held that they had waived their right to appeal "all procedural issues relating to the conduct of the administrative hearing." The district court, however, did comment that "[i]t certainly does not appear to this

_____

were to be filed with the Administrator of NOAA, they had to be filed within thirty days.

13

Court that the ALJ had the discretion to deny a hearing once one had been timely requested simply because the ALJ did not approve of the defendant's representatives."  Menendez and Plaisance filed timely notices of appeal.

**Discussion**

I. Nguyen

A. Timeliness of Nguyen's Notice of Appeal

The government first argues that Nguyen's appeal should be dismissed because his notice of appeal was untimely.  When the United States is a party to an action, Fed.R.App.P. 4(a)(1) requires a party to file a notice of appeal within sixty days of the entry of the judgment of the district court.  Fed.R.App.P. 4(a)(4)(F), however, stays the time to file a notice of appeal if any party files a motion under, *inter alia,* Fed.R.Civ.P. 60 within ten days after the entry of the judgment.  In the instant case, the district court entered a judgment granting summary judgment in favor of the government on November 8, 1993.  This judgment did not recite the amount of the penalties owed by Nguyen.  Therefore, on December 6, 1993, the government moved to amend the judgment to reflect the amount of relief sought in the complaint.  Because this motion was filed more than ten days after the entry of the November 8, 1993, judgment, the tolling provision of Fed.R.App.P. 4(a)(4)(F) was not triggered.  The district court entered its amended judgment on January 12, 1994, and Nguyen filed his notice of appeal on January 28, 1994.  If the November 8, 1993, judgment constitutes the final judgment, Nguyen's notice of appeal is untimely.  If the

14

January 12, 1994, judgment is the final judgment, Nguyen's notice of appeal is timely.

A judgment is final when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Budinich v. Becton Dickinson and Co.,* 486 U.S. 196, 199, 108 S.Ct. 1717, 1720, 100 L.Ed.2d 178 (1988) (citation and internal quotation marks omitted). This Court has held that a final judgment for money must at least specify the amount awarded so that it may be properly enforced. *Zink v. United States,* 929 F.2d 1015, 1020 (5th Cir.1991) (holding that two judgments that did not specify the amount of damages were not final judgments in tax refund suit notwithstanding the fact that the amount of damages was readily determinable from the complaint and other pleadings).[10] Because the district court's November 8, 1993, judgment did not specify the amount of the damages, it does not constitute a final judgment. Thus, Nguyen's notice of appeal was timely, and the panel has jurisdiction to hear this appeal.

B. Merits of Nguyen's Appeal

---

[10]Dicta in *Pemberton v. State Farm Mut. Auto. Ins. Co.,* 996 F.2d 789, 791 (5th Cir.1993), suggests that a judgment that fails to specify the amount of damages may still constitute a final judgment if the amount of damages is determinable from the complaint or other pleadings, when the judgment incorporates one or more such documents (or part thereof) by reference. The November 8 judgment here makes no incorporation by reference other than to say that the government's motion for summary judgment is granted for the reasons stated in the court's memorandum of even date. The memorandum does not address damages. In any event, because "[t]he first of conflicting panel decisions is to be followed," *Paura v. U.S. Parole Comm'n,* 18 F.3d 1188, 1189 (5th Cir.1994) (citation omitted), the holding of *Zink* governs over any contrary implications of the *Pemberton* dicta.

15

Nguyen argues that the district court erred in granting summary judgment in favor of the United States because the government failed to file the certified administrative record with the district court. Section 11(a)(1) of the ESA authorizes the Attorney General to institute civil proceedings in the district court to collect penalties assessed at the administrative level and states that "[t]he court shall hear such action *on the record made before the Secretary* and shall sustain his action if it is supported by substantial evidence *on the record considered as a whole.*" 16 U.S.C. § 1540(a)(1) (emphasis added). Because the government never filed a certified copy of the administrative record with the district court, Nguyen argues that the district court could not determine whether the NOAA's decision was "supported by substantial evidence on the record considered as a whole." In his opposition to the government's motion for summary judgment filed in the district court, Nguyen raised this same argument.

The government concedes that it did not file a certified copy of the administrative record with the district court, but argues that the certified portions of the record that it attached to its complaint as exhibits provide a sufficient basis to sustain NOAA's determination. In support of this argument, the government cites Section 10(e) of the Administrative Procedures Act (APA), relating to judicial review of agency action: "... the court shall review the whole record *or those parts of it cited by a party*...." 5 U.S.C. § 706 (emphasis added). Section 12 of the APA, however,

16

states that none of its provisions "limit or repeal additional requirements imposed by statute or otherwise recognized by law." 5 U.S.C. § 559. Thus, while we agree with the government that the APA is generally applicable to ESA,[11] nevertheless the ESA's provision that judicial review be "on the record made before the Secretary ... considered as a whole," without anything comparable to the "or those parts of it" language of section 10(e) of the APA, precludes our reliance on that portion of section 10(e). Accordingly, the district court erred in granting summary judgment for the government without considering the record as a whole.

Alternatively, the government argues that any error committed by the district court was harmless. The government asserts that Nguyen has failed to allege that he suffered any harm as a result of the district court's failure to review the record as a whole. Given the substantial portions of the administrative record that the government attached to its complaint as exhibits, this argument is not without some arguable merit. Moreover, the excerpts of the record attached to the government's complaint as exhibits appear generally to bear out the government's account of what transpired at the administrative level.[12] However, crucial parts of the

---

[11]The government also calls attention to the provision of section 11(a)(2) of the ESA, 16 U.S.C. § 1540(a)(2), that "[h]earings held during the proceedings for the assessment of civil penalties authorized by paragraph (1) of this subsection shall be conducted in accordance with section 554 of Title 5."

[12]In his opposition to the government's motion for summary judgment filed in the district court below, Nguyen arguably admitted the existence of the document in which McManus, purportedly acting as Nguyen's representative, stipulated to the factual basis of the charges. In the same motion, however,

17

administrative record, such as Nguyen's purported stipulation to the factual basis of the charges, were never filed with the district court.  Because the ESA expressly requires judicial review based on the entire administrative record, and because the district court did not have crucial portions of the administrative record before it, we reject the government's harmless error argument.

Nguyen asks this Court to dismiss the government's complaint. The government counters that if we decide that the district court erred in granting summary judgment without the complete certified record, the appropriate remedy is to remand the case for the limited purpose of allowing the government to file the administrative record.  This request apparently indicates that the administrative record may exist despite earlier statements by the government that it has not been able to locate a complete copy of the administrative record.  Accordingly, we reverse and remand in order to provide the government with the opportunity to file a certified copy of the administrative record with the district court, and for that court then to proceed with appropriate review.[13]

II. Menendez and Plaisance

Menendez and Plaisance argue that the district court erred in granting summary judgment in favor of the government, asserting that the ALJ's refusal to grant them a hearing constituted a denial

Nguyen denies that McManus was his representative.

[13]The district court may well also need to determine (in the first instance) if it is necessary to ascertain whether McManus was Nguyen's representative and whether it is necessary or appropriate to go beyond the administrative record for that purpose.

18

of their due process rights and violated the APA, the ESA, and the NOAA regulations. In response, the government proffers three reasons for affirming the judgment of the district court: that Menendez and Plaisance failed to exhaust their administrative remedies, that they waived their due process arguments, and that the ALJ properly denied their requests for a hearing.

A. Exhaustion of Administrative Remedies

Section 10(c) of the APA bears the caption "Actions reviewable" and contains the APA's exhaustion requirement:

> "Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority." 5 U.S.C. § 704.

Except as otherwise provided by law, the APA judicial review provisions apply to all federal agency actions unless a statute precludes judicial review or agency action is committed by law to agency discretion. APA § 10; 5 U.S.C. § 701(a). Neither condition applies here. Because NOAA is an agency of the United States government, and because the ESA does not specifically address the exhaustion of administrative remedies, section 10(c) of the APA applies. 5 U.S.C. §§ 551(1), 559. The government does not question this, and indeed argues that the APA is applicable. The fact that this suit is one brought by the government for judicial enforcement rather than one brought by a citizen to challenge agency action, does not mean that judicial review of the agency's action in this suit is not pursuant to the APA. The ESA contains

19

no provision for judicial review of penalties assessed under section 1540(a) other than in an enforcement action under that section. Section 10(b) of the APA, 5 U.S.C. § 703, provides that "[e]xcept to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement."

In *Darby v. Cisneros,* --- U.S. ----, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993), the Supreme Court discussed the statutory exhaustion requirement codified in section 10(c) of the APA. *Darby* involved proceedings before a Department of Housing and Urban Development (HUD) ALJ. In those proceedings, the ALJ rendered a decision debarring a real estate developer, Darby, from participating in federal programs for eighteen months. Under the applicable HUD regulations, the ALJ's decision became final unless the Secretary decided as a matter of discretion to review the ALJ's decision within thirty days. Any party could request such a review within fifteen days of the ALJ's decision. Neither party pursued discretionary review within the agency. Thereafter, Darby filed suit in federal district court seeking injunctive and declaratory relief from the ALJ's decision. Reversing the Fourth Circuit's holding that Darby had failed to exhaust his administrative remedies, the Court relied on the plain language of section 10(c):

> "When an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule, the agency action is "final for the purposes of this section' and therefore "subject to judicial review' under the first sentence [of section 10(c) ].... If courts were able to impose additional exhaustion requirements beyond those

20

provided by Congress or the agency, the last sentence of § 10(c) would make no sense.... Section 10(c) explicitly requires exhaustion of all intra-agency appeals mandated either by statute or by agency rule; it would be inconsistent with the plain language of § 10(c) for courts to require litigants to exhaust optional appeals as well." *Id.* --- U.S. at ---- - ----, 113 S.Ct. at 2544-45.

The facts of *Darby* are similar to the facts of Menendez's and Plaisance's cases. Like the HUD regulations involved in *Darby,* the NOAA regulations permit parties to seek wholly discretionary review within the agency, but do not require this as a prerequisite to judicial review. Moreover, the NOAA regulations provide that the ALJ's decision becomes final unless discretionary review is undertaken. There is, however, one factual distinction between the instant cases and *Darby.* In *Darby,* the individual affected by the agency action filed suit under the APA in district court to set aside the agency action. Here, the government filed suit in district court against Menendez and Plaisance under section 1540 to collect civil penalties assessed by the agency. This distinction affords no apparent basis to deviate from the holding of *Darby* and its interpretation of the plain language of section 10(c), as (subject to exceptions not applicable here) the same APA judicial review is equally available in both instances. See 5 U.S.C. § 703.[14]

The government's argument that *Darby* has no bearing on this

---

[14]Section 703, APA § 10(b), provides in part: "The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute.... Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement."

case is unavailing. In support of its argument, the government relies on the following language in *Darby:* "[F]ederal courts may be free to apply, where appropriate, other prudential doctrines of judicial administration to limit the scope and timing of judicial review." *Id.* --- U.S. at ----, 113 S.Ct. at 2544. Based on this phrase, the government asserts that Menendez and Plaisance should be required to exhaust their administrative remedies. This argument ignores the remainder of the very sentence on which it is based: "§ 10(c), by its very terms, has limited the availability of the doctrine of exhaustion of administrative remedies to that which the statute or rule clearly mandates." *Id.* Because Menendez and Plaisance have exhausted all administrative remedies required by statute or agency rule, and neither the ESA nor its regulations require further exhaustion as a condition to judicial review, the government's argument must fail. As the Court in *Darby* stated, "[c]ourts are not free to impose an exhaustion requirement as a rule of judicial administration where the agency action has already become "final' under § 10(c)." *Id.* --- U.S. at ----, 113 S.Ct. at 2548.[15]

---

[15]*See also Ciba-Geigy Corp. v. E.P.A.,* 46 F.3d 1208, 1210 & n. 2 (D.C.Cir.1995) (summarizing the holding of *Darby* as "courts cannot require exhaustion of administrative remedies where, as here, it is not expressly required by statute or agency rule").

We also note that *Darby* only addresses situations "where neither the statute nor agency rules specifically mandate exhaustion as a prerequisite to judicial review." *Darby,* --- U.S. at ----, 113 S.Ct. at 2540. *See also id.* --- U.S. at ----, 113 S.Ct. at 2543 ("neither the National Housing Act nor applicable HUD regulations require that a litigant pursue further administrative appeals prior to seeking judicial review"), --- U.S. at ----, 113 S.Ct. at

B. Waiver

Alternatively, the government argues that the district court correctly held that Menendez and Plaisance waived their right to appeal all procedural issues related to the conduct of the administrative proceedings by not pursuing the two avenues of discretionary appeal provided by the NOAA regulations. *See United States v. L.A. Tucker Truck Lines,* 344 U.S. 33, 37-38, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952) ("Simple fairness to the those who are engaged in the tasks of administration, and to litigants, requires

2547 ("Agencies may avoid the finality of an initial decision, first, by adopting a rule that an agency appeal be taken before judicial review is available, and, second, by providing that the initial decision would be "inoperative' pending appeal"), --- U.S. at ----, 113 S.Ct. at 2548 ("the exhaustion doctrine continues to exist under the APA to the extent that it is required by statute or by agency rule as a prerequisite to judicial review").

Examples of the kind of statutes or agency rules under which administrative exhaustion would be required might include: 8 U.S.C. § 1105(a)(c) ("[a]n order of deportation ... shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations") (see also 8 C.F.R. §§ 3.39, 242.21; *Townsend v. INS,* 799 F.2d 179, 182 (5th Cir.1986)); and, 20 C.F.R. § 404.900(b) (providing in social security cases that if a party fails to pursue all available steps in the agency review process, "you will lose your right to further administrative review and your right to judicial review, unless you can show us that there was good cause for your failure to make a timely request for review") (see also *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir.1994)).

Further, *Darby* does not address non-APA cases. See *Darby,* --- U.S. at ----, 113 S.Ct. at 2548 ("the exhaustion doctrine continues to apply as a matter of judicial discretion in cases not governed by the APA"). Our examples given in the immediately preceding paragraph are not intended to imply that judicial review in immigration cases or social security cases is (or is not) governed by the APA (in whole or in part).

23

as a general rule that courts should not topple over administrative decisions unless the administrative body has ... erred against objection made at the time appropriate under its practice."); *see also Massachusetts Dep't of Pub. Welfare v. Secretary of Agric.,* 984 F.2d 514, 523 (1st Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 81, 126 L.Ed.2d 49 (1993) (discussing waiver doctrine in administrative law under the label of the procedural default doctrine).

In *L.A. Tucker Truck Lines,* a trucker applied to the Interstate Commerce Commission (ICC) for a certificate of public convenience and necessity to authorize an extension of his existing truck route. 344 U.S. at 34-38, 73 S.Ct. at 67-68. Several trucking companies and railroads, including L.A. Tucker Truck Lines, intervened in the agency proceedings to oppose the trucker's application, but an examiner appointed by the ICC ultimately granted the extension. After exhausting all discretionary appeals within the ICC without avail, L.A. Tucker Truck Lines filed suit in the district court to set aside the order of the ICC, arguing for the first time that the ICC had no jurisdiction because the examiner had not been appointed in accordance with the procedures set forth in the APA. The district court agreed and invalidated the agency's order. Reversing, the Supreme Court held that L.A. Tucker Truck Lines had waived its jurisdictional argument by failing to raise it before the agency. *Id.* 344 U.S. at 34-36, 73 S.Ct. at 68.

The First Circuit has applied this administrative law doctrine

of waiver in several recent cases. In *Massachusetts Dep't of Pub. Welfare,* the state of Massachusetts sought judicial review of punitive sanctions imposed by the Food and Nutrition Service, arguing for the first time that the agency had violated its own regulations by considering an oversampling of food stamp cases. 981 F.2d at 518. Analogizing the administrative law doctrine of waiver to the rule that an appellate court will not consider arguments not raised in the trial court, the First Circuit held that the state had waived any oversampling argument by failing to raise it before the ALJ. *Id.* at 522-23. In *Eagle Eye Fishing Corp. v. United States Dep't of Commerce,* 20 F.3d 503, 504 (1st Cir.1994), NOAA charged a fishing company with violating the Magnuson Fishery Conservation and Management Act of 1976 and regulations prohibiting the capture or possession of blue marlin shoreward of this country's Exclusive Economic Zone. The fishing company denied the charges at the proceeding before the ALJ, but the ALJ rendered a decision in favor of NOAA. Thereafter, the fishing company sought discretionary review pursuant to 15 C.F.R. § 904.273, raising for the first time the argument that NOAA had violated its own confidentiality regulations by publicly disclosing information from the fishing company's logbook. After the NOAA Administrator refused to consider this contention because the fishing company never raised it before the ALJ, the company sought judicial review, again arguing that NOAA violated its confidentiality regulations. Affirming the district court's dismissal of the suit, the First Circuit held that the fishing

25

company's failure to raise the argument before the ALJ constituted a waiver. *Id.* at 505.

In holding that Menendez and Plaisance waived their due process arguments by failing to pursue discretionary review within NOAA, the district court misapplied the waiver doctrine. The district court based its waiver holding on Menendez's and Plaisance's failure to pursue their due process arguments within NOAA through the available avenues of discretionary appeal. It is, however, clear that Menendez and Plaisance raised their due process arguments before the ALJ by twice requesting hearings. Indeed, the district court stated that Menendez and Plaisance requested hearings on two separate occasions.[16] Nevertheless, the district court held that they waived their due process arguments by failing to pursue these arguments by taking discretionary appeals. Although the Court in *Darby* expressly stated that federal courts remain free to apply other prudential doctrines of judicial administration, the district court's holding contradicts the import of *Darby.* Because Menendez's and Plaisance's requests for a hearing before the ALJ constituted sufficient objections to preserve their due process arguments, the district court erred in holding that their failure to pursue these arguments by taking discretionary appeal channels amounted to a waiver. The instant case is easily distinguishable from *L.A. Tucker Truck Lines.*

---

[16]The government argues that the September 4, 1990, facsimile from Margaret Mialjevich did not constitute a second request for a hearing. The district court, however, interpreted this facsimile as a second request for a hearing. We agree.

26

There, the trucking company raised an argument about the illegal appointment of the examiner for the first time in the district court. By contrast, Menendez and Plaisance asked the ALJ for a hearing twice. Thus, this case does not involve a party waiting to raise an argument for the first time in the district court.

In *Massachusetts Dep't of Pub. Welfare,* the court noted the overlap between the doctrines of waiver and exhaustion in administrative law, but stressed that the two doctrines are not synonymous. 981 F.2d at 523 & n. 8. By focussing on the parties' failure to reassert their requests for a hearing through the discretionary appeals systems established by the NOAA regulations, the district court confused the waiver and exhaustion doctrines and created an end run around *Darby.* Although the Court in *Darby* held that parties are not required to exhaust discretionary appeals within an agency, the district court below essentially required Menendez and Plaisance to do so by making a failure to exhaust discretionary appeals a waiver. As the First Circuit reasoned in *Massachusetts Dep't of Pub. Welfare* and *Eagle Eye Fishing Corp.,* the doctrine of waiver in administrative law parallels the well-established rule that appellate courts will not consider arguments not raised before the trial court. *See Eagle Eye Fishing Corp.,* 20 F.3d at 504-05 (finding waiver where party failed to assert argument before the ALJ notwithstanding fact that party raised the argument in NOAA discretionary review). Because Menendez and Plaisance raised their right-to-a-hearing claims before the ALJ, the district court erred in holding that their

failure to pursue discretionary review was a waiver.[17]

C. Summary Judgment

Menendez and Plaisance argue that the district court erred in granting summary judgment in favor of the government because the ALJ improperly granted summary judgment in favor of NOAA. Section 7(c) of the APA provides that, "[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of proof." 5 U.S.C. § 556(d). Because the ESA and the NOAA regulations do not shift the burden of proof for establishing the violation,[18] NOAA bears the burden of proof to establish a violation of the ESA before the ALJ. Under the NOAA regulation addressing summary decision, the ALJ has the authority to grant summary decision on his own motion when "the entire record shows ... [t]hat there is no genuine issue as to any material fact" and "the moving party is entitled to summary decision as a matter of law." 15 C.F.R. § 904.210. Here, the ALJ disbarred the parties' first representative after he requested a hearing for his clients and then issued an order directing the parties to show cause why their cases should not be dismissed in the same manner as the *Tommy V. Nguyen* case.

---

[17]We do not address the situation where a discretionary (or other) appeal is taken or attempted, but the contention claimed to be waived is not raised in the appeal or attempted appeal. Nor do we address the consequences of failure to take an appeal where review by the higher agency authority is mandatory, rather than discretionary, if the appeal is timely taken in proper form. Similarly, we do not deal with a situation where the applicable statute or regulations provide for a waiver.

[18]The NOAA regulations, however, do shift the burden of proof to the charged party to show financial inability to pay the assessed penalty. 15 C.F.R. § 904.108.

Thereafter, the ALJ refused to consider the parties' response to his show cause order because it came from Margaret Mialjevich and directed that any future communications from her would be returned without action. Nothing in the record justifies this action by the ALJ. Because the parties never responded to his order to show cause, the ALJ then entered an order dismissing their request for a hearing and assessing the penalties proposed in the NOVAs.

It is undisputed that NOAA bears the burden of establishing a violation by Menendez and Plaisance. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Thus, in order to grant summary decision for the government, the ALJ must have summary judgment evidence before him that would sustain a finding in favor of the government at trial. This summary judgment evidence must consist of more than the mere allegations contained in the NOVA; rather, the ALJ must have summary judgment evidence before him in the form of affidavits, depositions, answers to interrogatories, and/or admissions. *Id.* 477 U.S. at 323-25, at 2553, Fed.R.Civ.P. 56(e).

When he entered summary decision in favor of the agency, the only evidence before the ALJ was the NOVAs. The government never moved for summary judgment before the ALJ. At oral argument, counsel for the government argued that the NOVA constituted

29

sufficient summary judgment evidence to sustain the ALJ's summary decision.  The NOVA, however, is an *unsworn* document signed by a NOAA staff attorney not claiming to have personal knowledge of the matters alleged and contains only the factual allegations of the charged violation.  Thus it does not constitute any summary judgment evidence.  *See Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992) ("Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment.");  *see also* 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2738 (1983). Accepting the government's argument would shift the burden of proof to the party charged with the violation;  thus, the government would prevail even when it produces no evidence as long as the charged party did not produce any evidence.  Because the ALJ improperly shifted the burden of proof to the parties charged with the violations, we reverse the district court's judgment granting summary judgment in favor of the government.

## Conclusion

In each of the three cases before us, we reverse the summary judgment for the government and remand the cause to the district court for further proceedings not inconsistent herewith.

REVERSED and REMANDED.