**ATLANTA SCHOOL OF KAYAKING, INC. and Theo Eugene Sparks, Plaintiffs,**

v.

**The DOUGLASVILLE–DOUGLAS COUNTY WATER AND SEWER AUTHORITY, Defendant.**

No. CIV.A.1:96–CV–1886–WBH.

United States District Court, N.D. Georgia, Atlanta Division.

April 25, 1997.

resident kayakers and canoers ("Non-resident Paddlers") from paddling into the Dog River Reservoir (the "Reservoir") located in Douglas County from the Dog River, through the Dog River Reservoir, and from exiting the Dog River and the Reservoir with the kayaks or canoes at the Reservoir's boat ramp.

## I. BACKGROUND

The School of Kayaking provides kayaking lessons for profit, using rivers in Georgia, Tennessee, North Carolina and South Carolina. Sparks is a private canoe instructor who also uses or "paddles" rivers in Georgia, Tennessee, North Carolina and South Carolina in his occupation. The Authority manages and operates a boat ramp and parking facility (the "Facility") on the Reservoir, which was constructed by damming the Dog River up river from where it flows into the Chattahoochee River.

The Authority built and now maintains the Facility and the Reservoir pursuant to a permit from the United States Army Corps of Engineers (the "Permit"). The Permit requires the Authority to "provide a public access area, stock the reservoir with fish, and permit and encourage public fishing to the extent practicable considering the project's primary purpose (water supply)." The Reservoir supplies drinking water for Douglas County. Additionally, the Reservoir serves as an area for recreational boating and fishing. A fee is charged for use of the Facility and Reservoir.[1]

Michael B. Terry, Paul Howard Schwartz, Bondurant, Mixson & Elmore, Atlanta, GA, for Plaintiffs.

Joseph H. Fowler, Milbree Farquhar Lankford, Hartley, Rowe & Fowler, Douglasville, GA, for Defendant.

HUNT, District Judge.

### *ORDER*

This case is before the Court on plaintiffs Atlanta School of Kayaking, Inc. ("the School of Kayaking") and Theo Eugene Sparks's motion for preliminary injunction against defendant Douglasville–Douglas County Water and Sewer Authority ("the Authority") [10]. Plaintiffs request the Court to enjoin defendants from forbidding the School of Kayaking, Sparks, and other non-Douglas County

In April 1994, the Authority enacted Resolution 94–33, which restricts access to the Reservoir and the Facility to residents of and owners of real property in Douglas County and their guests (the "Resolution"). Its pertinent effect which concerns this Court is that it bans outside individuals, including the plaintiffs, from using the Reservoir as a point of egress from the Dog River, when they have paddled from upstream in the Dog River to the Reservoir.[2]

---

**1.** Apparently, the revenues generated by the fees charged for use of the Facility and Reservoir have been less than anticipated by the Authority, and the Facility has operated at a loss.

**2.** The Resolution provides that

[t]he Dog River Reservoir may be used only by Douglas County residents, property owners and their guests who have paid the appropriate charges and/or secured the proper permits outlined in these rules and regulations. General public access to the reservoir shall be made only at the entrance gates located off State

The Dog River is a popular whitewater river and the closest such river to the Atlanta metropolitan area. Since 1971, the Dog River has attracted paddlers from this area, from throughout the State of Georgia, and from other states. There are varying descriptions of the water levels at the Dog River. Defendants attach an article by David Cox, River Access Chairman, Georgia Canoeing Association which appeared in the May/June 1995 issue of *American Whitewater* magazine. Cox stated that the Dog River "is generally considered a high water run that is runnable on an infrequent basis at best." Def.'s Br. in Opp'n to Mot. for Prelim. Inj. Exh. B. Plaintiffs' counsel also stated to defendant that paddling the Dog River is "a particularly enjoyable whitewater experience only after rainfall, and then only for a brief period of time." Nevertheless, there does not appear to be any direct dispute that canoes, kayaks, rafts, innertubes, and similarly sized vessels generally can journey down the river at points upstream from the Reservoir throughout the year[3] At some water levels, larger water craft also might be used on the Dog River. But, the peak lime for the whitewater kayaking or canoeing is following rainstorms. *Id.*

Prior to the damming of the Dog River and the passing of the Resolution, individuals paddling entering the Dog River from a "put-in" upstream and paddling down the Dog River could remove their vessels from the river near the Highway 166 bridge, or could continue their passage on down the Dog River to its merger with the Chattahoochee River. The dam on the Dog River now requires that the kayakers or canoers exit the Dog River upstream from its confluence with the Chattahoochee; they can either finish their run above the Chattahoochee or

Highway 166 or by water entry at the northerly most point of the reservoir property. Resolution 94–33, § 6–7.

**3.** Although unclear to the Court where the spot is along the Dog River, there appears to be a "put-in" for the kayakers and canoers where the paddlers can launch their boats. For obvious reasons, paddlers cannot simply paddle back upstream to remove their boats from the water at the "put-in."

they can rejoin the Dog River below the dam or enter the Chattahoochee.

The boaters cannot exit the Dog River upstream from the Reservoir because the land adjacent to the river is privately owned. The boaters cannot pass through the Reservoir or use the Facility to exit the river and Reservoir.[4] Hence, effectively they are banned from canoeing or kayaking on the Dog River.

The plaintiffs argue that the Authority should be enjoined from enforcing the Resolution as to them because the restriction against nonresidents of Douglas County violates the federal navigable servitude under the Commerce Clause of the United States Constitution and facially discriminates against nonresidents in violation of Articles I and IV of the Constitution. Defendant generally contends that (1) the Dog River is not a navigable waterway and thus the navigable servitude does not exist and (2) increased use of the Reservoir would endanger the quality of the drinking water and thus the restriction is reasonable. *See* Aff. of Ronnie J. Wood.

## II. DISCUSSION

■ "A preliminary injunction is extraordinary relief." *Cuban Am. Bar Ass'n v. Christopher*, 43 F.3d 1412, 1424 (11th Cir. 1995). To be entitled to the preliminary injunction requested, plaintiffs must show that (1) they have a substantial likelihood of access on the merits of their claims; (2) there is a substantial threat of irreparable injury absent an injunction; (3) that the greater harm would be visited upon them rather than the Authority should the injunction not be granted; and (4) the interests of the public would not be disserved by the issuing of the injunction. *Id.* The Court discusses these criteria seriatim.

**4.** A large sign greets paddlers as they approach the Reservoir from upstream on the Dog River which reads, "NO KAYAKS NO RAFTS BEYOND THIS POINT." Aff. of James Cole Exh. I (photographs of the Dog River and the sign); Def.'s Br. in Opp'n to Mot. for Prelim. Inj. Exh. B.

### A. Substantial Likelihood of Success on the Merits

Plaintiffs bring two substantive counts against the defendant. First, plaintiffs contend that the Authority has violated 42 U.S.C. § 1983, and, second, that the Resolution impedes plaintiffs' common law right of passage under Georgia law. Derived from the two counts contained in the complaint, plaintiffs offer four specific reasons why the Authority should be enjoined from enforcing the Resolution against them. The Court need not conclude that plaintiffs have carried their burden of proof on any single claim or on all claims, only that the proof supports a substantial likelihood of success on at least one claim or theory which in turn would support a preliminary injunction.[5]

Plaintiffs' first and seemingly primary contention is that "the Resolution violates the Commerce Clause of the United States Constitution (U.S.Const[.], Art. I, § 8, cl.3) by creating a regulatory and practical barrier or obstruction to navigation of a navigable waterway of the United States in violation of the federal navigable servitude." Pls.' Br. in Supp. of Mot. for Prelim. Inj. at 7.[6]

■ Section 1983 does not create constitutional or other federal rights; instead, it provides plaintiffs with a method for securing relief for violations of already established federal rights. *Skinner v. City of Miami*, 62 F.3d 344, 347 (11th Cir.1995). Commerce Clause violations are such established rights. *Dennis v. Higgins*, 498 U.S. 439, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991). Sparks and the School of Kayaking contend that the federal navigational servitude exists in favor of all individuals, apparently as members of the public, and creates a constitutional right of public access under the Commerce Clause. *See Dardar v. Lafourche Realty Co.*, 985 F.2d 824, 832 (5th Cir.1993) ("When a navigational servitude exists, it gives rise to the right of the public to use those waterways as 'continuous highways for the purpose of navigation in interstate commerce.'" (quoting *Kaiser Aetna v. United States*, 444 U.S. 164, 178, 100 S.Ct. 383, 392, 62 L.Ed.2d 332 (1979))); *United States v. Harrell*, 926 F.2d 1036, 1041 (11th Cir.1991) ("The navigable waters of the United States are public property.... If the navigational servitude of the Tombigbee River, as a 'navigable waterbody' encompasses Lewis Creek, [then] Lewis Creek is public property and appellants may, subject to state law, have a right of public access. ").

■ The Eleventh Circuit Court of Appeals has set forth the framework which district courts in this circuit must apply when considering whether a body of water "is a navigable waterway to which [individuals] have a right of public access." *Harrell*, 926 F.2d at 1038.[7] The Court must ascertain first whether the body of water in question is "navigable in fact," and then whether the navigational servitude exists creating a public right of access. The answers to these questions are determined by federal law. *The Daniel Ball*, 77 U.S. 557, 563, 10 Wall. 557, 19 L.Ed. 999 (1870); *Harrell*, 926 F.2d at 1040.

■ A body of water or river is "navigable in fact" or in other words for the purposes of law, if "it is used or susceptible of being used in its ordinary condition to transport com-

---

5. Because the plaintiffs indicate an order of preference in the theories to be considered by the Court, the Court respects that progression and considers each theory in turn as necessary. *See generally* Pls.' Br. in Supp. of Mot. for Prelim. Inj. at 23 ("[E]ven should the Court somehow hold that the Dog River is not navigable, is not susceptible of commercial use, that the canoe and raft industry is not commerce **and** that the Privileges and Immunities Clause does not apply, the Resolution, in interfering with the right of passage and destroying without compensation that public easement, is still unlawful and should be enjoined.").

6. The federal navigational servitude to which plaintiffs refer generally provides the federal gov-

ernment, particularly Congress, the power to regulate navigational bodies of water by allowing it to obstruct or modify the flow of waterways and by preventing others from illegally obstructing or modifying those same waterways. This power carries neither the obligation to pay compensation under the Takings Clause of the Fifth Amendment to the United States Constitution nor the liability which may be associated with such acts. *Murphy v. Department of Natural Resources*, 837 F.Supp. 1217, 1221 (S.D.Fla.1993).

7. The private plaintiffs in *Harrell* apparently did not assert a section 1983 claim but instead were seeking a declaratory judgment that a public right of access existed.

merce." *Harrell*, 926 F.2d at 1039 (citing *United States v. Appalachian Elec. Power Co.*, 311 U.S. 377, 406 & n. 19, 61 S.Ct. 291, 298 & n. 19, 85 L.Ed. 243 (1940)).[8] Under the Corps of Army Engineers' federal regulations, adopted pursuant to the Rivers and Harbors Act, 33 U.S.C. § 401 *et seq.*,

> [n]avigable waters of the United States are those waters that are subject to the ebb and flow of the tide and/or are presently used, or have been used in the past, or may be susceptible for use to transport interstate or foreign commerce. A determination of navigability, once made, applies laterally over the entire surface of the waterbody, and is not extinguished by later actions or events which impede or destroy navigable capacity.

33 C.F.R. § 329.4 (1996).

■ The Authority challenges plaintiffs' conclusion that the Dog River and the Reservoir are navigable in fact.[9] Defendant argues that the plaintiffs are not entitled to a finding of navigability because they have "presented no evidence that the Dog River is *generally and commonly* useful for carrying on commerce." Def.'s Br. in Opp'n to Mot. for Prelim. Inj. at 4. However, the test is not whether it is "generally and commonly useful" for commerce, "[t]he test is whether the river was *susceptible* of being used as a highway for commerce at statehood, not whether it was actually so used." *Alaska v. Ahtna, Inc.*, 891 F.2d 1401, 1405 (9th Cir. 1989) (emphasis added). It is true that currently there is little use of the Dog River as a major source of interstate commerce. However, "the presence of recreational craft may indicate that a waterbody is capable of bearing some forms of commerce, either presently, in the future, or at a past point in time;" thus, supporting a finding of navigability. 33 C.F.R. § 329.6(a). In this case, plaintiffs have a substantial likelihood of success on the finding that the Dog River is navigable under federal law because of the ability of kayaks and canoes to travel down the river [10] and for Sparks and the School of Kayaking to travel down the river with students for pay.[11]

The Authority raises only one defense to the existence of a generally unfettered federal navigational servitude: "[t]he granting of the Permit to the Authority ... implies that the obstruction of navigation on this section of the Dog River is reasonable." Def.'s Br. in Opp'n to Mot. for Prelim. Inj. at 6. The Authority suggests that because the Permit does not require that the Authority permit "unrestricted public access" but only "public access," the Permit authorizes the restriction contained within the Resolution. This reading of the Permit requirement is meritless.

For the foregoing reasons, the Court is of the opinion that Sparks and the School of

---

**8.** The Supreme Court in *The Daniel Ball*, 77 U.S. at 563, held that navigable waters are those which "form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water."

**9.** The Court finds the Authority's reliance on *United States v. Crow, Pope & Land Enterprises, Inc.*, 340 F.Supp. 25, 36 (N.D.Ga.1972), *appeal dismissed*, 474 F.2d 200 (5th Cir.1973), unpersuasive for two reasons. First, the district court was not opining about the Dog River, merely a river nearby. Second, the Fifth Circuit found that the district court's conclusion that the stretch of river in question was non-navigable was untenable at that stage of the litigation because no final adjudication of navigability had been made. *United States v. Crow. Pope & Land Enterprises, Inc.*, 474 F.2d 200, 201 (5th Cir. 1973) ("Even though the parties had not yet had an opportunity to try this issue and despite the fact that the record was *completely barren* of any evidence on the question, the district court nevertheless entered an order not only determining that the stretch of the Chattahoochee in question was non-navigable, but also rejecting without merit the Government's tributary theory." (emphasis added)).

**10.** The Dog River at some points apparently has rapids, rocks and shifting currents. These attributes do not prevent a finding of navigability. 33 C.F.R. § 329.10. Additionally, the Court believes that the fact that the United States Army Corps of Engineers permitted the construction of the Reservoir pursuant to the Rivers and Harbors Act, 33 U.S.C. § 403, supports the conclusion that the Dog River is a navigable waterway under federal law. The Court does not now conclude that the Dog River is indeed navigable—only that such a conclusion is probable or likely.

**11.** The fact that the Dog River is entirely within the State of Georgia does not prevent it from being capable of carrying interstate commerce. 33 C.F.R. § 329.7.

Kayaking have shown a substantial likelihood of success on the merits of this claim. Therefore, the Court does not address at this time the merits of plaintiffs' contentions that the restriction illegally discriminates against the Non-resident Paddlers, that the restriction violates the Privileges and Immunities Clause of the Constitution or violates Georgia's common law Right of Passage.

### B. *Irreparable Injury*

Because the Court has decided that the plaintiffs have a substantial likelihood of success on the merits on their primary claim, the Court now addresses whether the plaintiffs will suffer irreparable injury absent a preliminary injunction. The Court concludes they will. Unlike in cases where monetary damages may suffice to compensate an individual for a right forgone, each run down the Dog River that plaintiffs cannot take not only has a pecuniary impact in loss of revenue but a nonpecuniary impact as well—the lack of enjoyment of a peculiar natural resource. Restriction of this natural resource causes unique, nonpecuniary, irreparable harm to the plaintiffs. *See Rivera v. United States,* 910 F.Supp. 239, 242–43 (D.Virgin Islands 1996).

### C. *Balance of Harms*

As the third consideration prior to granting a preliminary injunction, the Court must assess whether the harm to the defendant is greater than the harm to the plaintiffs. Plaintiffs have not argued that the balance of harms weighs in favor of denying a preliminary injunction except to the extent that any additional use of the Reservoir may impact water quality. *See* Aff. of Ronnie J. Wood. Even with that in mind, review of the record compels the conclusion that additional kayaking and canoeing from the point where the Dog River enters the Reservoir to the boat ramp will not significantly impact the water quality of the Reservoir. Hence, the Court cannot conclude that a preliminary injunction should be denied on this basis.

### D. *Interests of the Public*

Lastly, the Court must determine that the issuance of preliminary injunction would not disserve the public interest. The Court finds the public interest of Douglas County residents will not be disserved by additional kayaking and canoeing from the point where the Dog River enters the Reservoir to the boat ramp, and the public interest of others would be served by being allowed access to the Reservoir for egress from the Dog River.

### III. CONCLUSION

For the above reasons, the Court concludes that plaintiffs are entitled to a preliminary injunction. However, the injunction does not prevent enforcement of the Resolution in all respects.[12] *See* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2947 (1973) (noting that the district court "may mold its decree to meet the exigencies of the particular case").

It is ORDERED that the Authority is ENJOINED from enforcing that portion of Resolution 94–33 which precludes Non-resident Paddlers, as defined above, from utilizing the Reservoir or the Facility for the sole reason of egress from the Dog River flow at a point upstream from the Highway 166 bridge. Non-resident Paddlers shall be allowed to paddle from the point where the Dog River joins the Reservoir across the Reservoir to the Facility and to use the Facility, including the parking lot and boat ramp, for egress from the Dog River. All rules which apply to Douglas County residents for the use of the Reservoir and Facility shall apply to the Non-resident Paddlers. However, non-residents of Douglas County, including all Non-resident Paddlers, may not launch boats from the ramp or fish in the Reservoir. Non-resident Paddlers using the Reservoir and the Facility shall pay to the Authority the same fees as charged to Residents for use of the Reservoir and Facility despite the additional restrictions in privileges.

Therefore, at this time, this order does not modify any other effects or portions of the Resolution, including the charge for fees.

---

**12.** In contrast, however, the Court does not conclude that the prohibition on non-county fishing from the lake is illogical or unconstitutional.

The parties have agreed, for safety reasons, that Non-resident Paddlers are barred from paddling downstream of the Highway 166 bridge (downstream of the boat ramp).

Pursuant to Federal Rule of Civil Procedure 65(c), the party being granted an Injunction is required to give security "for the payment of costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed.R.Civ.P. 65(c). Neither party has addressed the issue of security or what amount, if any, would be proper in this case. After review of the record, the Court concludes that no security need be deposited by plaintiffs because they seek only to protect the public interest and because there is *no obvious risk of monetary loss to defendants* due to the issuance of the injunction, particularly in light of the requirement that all Non-resident Paddlers using the Reservoir and Facility pay user fees to the Authority.

This injunction shall remain in effect until further order of the Court.[13]

### *ORDER AND JUDGMENT*

Plaintiffs' motion for preliminary injunctive relief was granted by this Court by an Order entered April 25, 1997. Subsequent to the entry of that Order, the Court was informed that the parties had consented to consolidation of the trial on the merits with the preliminary injunction motion pursuant to Fed. R.Civ.P. 65(a)(2). The Court hereby orders such consolidation nunc *pro tunc*. The injunction entered by the Court on April 25, 1997 is hereby made permanent, the preliminary findings of fact and conclusions of law made final, and the April 25, 1997 Order is hereby made the Judgment of the Court, with the modification set forth herein.

In footnote 3 of the April 25, 1997 Order, the Court noted that the location of the furthermost upstream point regularly used by the persons navigating the Dog River was unclear. The parties have clarified this issue, and the furthest such upstream point is the Post Road Bridge.

The Court holds that, as the prevailing parties, plaintiffs are entitled to recover their reasonable attorney's fees and expenses from the Authority pursuant to 42 U.S.C. § 1988. The Court has been informed that the parties have reached agreement as to the amount of such fees and expenses.

Therefore, the Clerk of the Court is hereby ORDERED to enter judgment in favor of plaintiffs in accordance with the Order of April 25, 1997 as modified herein, with all court costs to be assessed against Defendant.

---

13. At any point at which it appears, from admissible evidence, that the Non–Resident Paddlers are adversely affecting the water quality of the Reservoir, defendants may move to vacate the injunction.